## A98A1820. TURNEY v. THE STATE.
(509 SE2d 670)

JOHNSON, Presiding Judge.

A Dawson County jury found Rodney Turney guilty of kidnapping with bodily injury and cruelty to children. The trial court reduced the kidnapping with bodily injury conviction to kidnapping and entered a judgment of conviction on the two felonies, kidnapping

---

and cruelty to children. Turney appeals. For the reasons set out below, we affirm both convictions.

The evidence presented at trial showed that Rodney and Tammy Turney were married and had two daughters, three-year-old Anna and six-year-old Kayla. On the night in question, Rodney Turney came home after the children had been put to bed. He told his wife he wanted to talk to her about buying a truck. Because he had been drinking and appeared to her to be drunk, she told him they could talk about it in the morning. An argument erupted. She told him she was going to bed. She went to the bedroom, got into their bed, and pretended to be asleep. Turney later entered the bedroom and began pushing his wife, calling her names and telling her to wake up. She told him to keep his voice down so the children would not wake up. He went back into the living room and turned up the volume on the television. His wife went to the living room and told him to turn down the volume because she did not want the children to be awakened. Turney yelled and cursed at her. He reminded her that her family was coming to visit the following week and warned her that if any of her family members set foot on the property, he would kill them. He called her parents insulting names. She slapped him and ran back into their bedroom. Turney chased her and threatened to kill her and "mess up" her nose. She assumed a fetal position on the bed and covered her head. Turney hit her about her head and face with his fists. She begged him to stop and told him she would leave the house, to which he responded that he would throw her off the porch. He pulled her off the bed and dragged her to the doorway of the bedroom. Their three-year-old daughter was standing in the doorway and screamed at her father to stop hurting her mother and to let her mother go. Turney told the child to go back to bed, that he was "fixing to get rid of this piece of trash of a mother she had." He then yelled at the child, using profanity, and told the child to go back to bed. The child ran back to her room. Turney dragged his wife to the front doorway, stomped her hand, dragged her across the porch and pushed or kicked her in the back. He told her he should have killed her a long time ago and was going to do it now. As Turney went back into the house, his wife escaped to the family's van. She saw Turney come out of the house with what appeared to be a gun and heard shooting. She drove away and contacted police.

1. Turney contends the trial court erred in entering a judgment notwithstanding the verdict to reduce the kidnapping with bodily injury offense to the lesser included offense of kidnapping when the jury had not been charged on kidnapping. Turney claims the trial court should have instead simply acquitted him of the kidnapping with bodily injury charge. The record shows that Turney waived this argument by agreeing to the trial court's action and failing to pre-

serve the error for review on appeal.

The issue arose during sentencing when the prosecutor pointed out to the trial court that a kidnapping with bodily injury conviction carried a mandatory minimum sentence of life imprisonment. See OCGA § 16-5-40. Having presided over the trial and having heard all the evidence, the trial court expressed the opinion that the facts of the case did not appear to warrant the imposition of a life sentence. The trial court then asked both counsel for suggestions on resolving the issue. The assistant district attorney announced to the trial court that the state would agree to have the trial court sentence Turney for kidnapping rather than kidnapping with bodily injury. Defense counsel remarked that he appreciated the state's willingness to reduce the charge. The trial court expressed concern as to whether it could properly reduce the charge and whether the correct procedure would be to enter j.n.o.v. on the kidnapping with bodily injury charge. When the trial court asked defense counsel for his thoughts on the matter, counsel replied: "I do think it's a matter of a judgment notwithstanding the verdict in the case and I think the Court can do that upon their own motion. . . . I believe the Court can do exactly what the Court is speaking of." The trial court asked defense counsel if he was suggesting that the court could grant a j.n.o.v. and reduce the finding to guilty of kidnapping. Defense counsel replied: "That's what I'm suggesting the Court has the authority to do." The trial court then specifically asked defense counsel if, for the purposes of appeal, Turney would waive the issue of whether the trial court was authorized to grant a j.n.o.v. and reduce the charge. Defense counsel consulted Turney and reported to the trial court that Turney would waive the procedural issue, provided he retained the right to appeal the substance of the kidnapping verdict. The trial court then engaged in an exhaustive colloquy with Turney, asking Turney whether he understood what was happening and that he was waiving his right to appeal the procedural correctness of the grant of the motion for j.n.o.v. The trial court added that Turney retained the right to appeal the substantive issues in the case. Turney remarked that he understood and agreed to the procedure.

It is clear that the error enumerated in this appeal raises precisely the issue Turney waived during the sentencing hearing. In fact, defense counsel not only suggested the procedure was authorized, but he and Turney both repeatedly assured the trial court that the procedure was acceptable to Turney. Furthermore, not only did Turney directly and significantly benefit from the reduction, nowhere in the sentencing discussions did he or his attorney suggest acquittal as a remedy for the trial court's reluctance to impose a life sentence. One cannot complain of a judgment, ruling or result he has procured or aided in causing by his own strategy, tactics or conduct. *Gill v.*

*State*, 229 Ga. App. 462, 464 (3) (494 SE2d 259) (1997); *Hawkins v. State*, 195 Ga. App. 739 (2) (395 SE2d 251) (1990).

Our holding in this division is based solely upon Turney's failure to preserve the issue for appeal. We cannot in any way condone the procedure employed in this case, though we can understand from our review of the record why the trial judge felt disposed to find a way to resolve what he perceived as a real injustice. Based upon our review of the record, we can understand why the trial court and the assistant district attorney who prosecuted the case concluded that the imposition of a life sentence seemed inappropriately harsh given the facts of the case. However, no matter how well intentioned the trial court was, it was not authorized, even with the agreement of the state and the defendant, to usurp the statutory requirement that a minimum sentence of life imprisonment be imposed on a kidnapping with bodily injury conviction. Under our system, it is the exclusive province of the legislature to prescribe the range of punishment for criminal offenses. Where the legislature has established a minimum mandatory sentence for an offense, and the evidence submitted at trial is legally sufficient to support the jury's verdict of guilty for that offense, courts are simply not authorized to substitute their judgment for that of the legislature. Certainly judges and lawyers are authorized to inform the legislature of situations like the one presented here which call into question the wisdom of a particular statute. Indeed, we have a duty to do so.

If at its end this case was not a proper one in which to charge, convict and sentence Turney for kidnapping with bodily injury, it was also thus at the beginning. Judging from the record before us, this case was thoroughly investigated and skillfully prosecuted. Surely the evidence upon which Turney's conviction was predicated was as well known to the state before trial, indeed before indictment, as it was after the jury had completed its work. The true responsibility for deciding upon which offense to charge and assuring that a conviction and sentence for that offense would be warranted and appropriate in light of the evidence available rested with the state. That the state ultimately acted so as to avoid an injustice it too late perceived is certainly commendable and lends truth to the old adage "better late than never." We simply point out that if corrected at the proper time, at the beginning of the process or, at the very least, before the jury was instructed, the trial court would not have been placed in the awkward position of having to act as it did to avoid injustice at the risk of usurping power vested exclusively in the legislature.

2. Turney contends that the trial court erred in not directing a verdict of acquittal on the cruelty to children charge. He maintains that his acquittal of the reckless conduct and battery charges

required a dismissal of the cruelty to children charge because the reckless conduct and battery charges formed the basis of the cruelty to children charge. This enumeration is without merit.

A person commits the offense of cruelty to children in the first degree when he maliciously causes a child under the age of 18 cruel or excessive physical or mental pain. OCGA § 16-5-70 (b).

The cruelty to children charge brought against Turney was not based on the battery and reckless conduct charges. Count 2 of the indictment alleged Turney committed the offense of cruelty to children by causing his small child "cruel and excessive mental pain by hitting, beating, and striking . . . the child's mother and by pulling [the mother's hair] and dragging her." Count 3 of the indictment alleged Turney committed the offense of reckless conduct by endangering the safety of his two children, namely "walking around the residence with a loaded firearm and discharging the weapon." Count 4 alleged Turney committed a battery by causing "substantial physical harm and visible bodily harm to [his wife] by hitting, beating, and striking her on and about the head and face, which resulted in bruises." Thus, Counts 3 and 4 do not contain the same allegations as Count 2. Indeed, the jury might have believed that Turney hit, beat, struck, and dragged the mother and pulled her hair, but was not convinced beyond a reasonable doubt that he carried and discharged a loaded gun or caused the mother *substantial* and *visible* harm which resulted in bruises. Thus, an acquittal of the battery and reckless conduct charges would not require an acquittal of the child cruelty charge.

Furthermore, in light of the abolition of the inconsistent verdict rule in criminal cases in Georgia, the sole issue is whether the evidence was sufficient to authorize a rational trier of fact to find Turney guilty of cruelty to children beyond a reasonable doubt. See *White v. State*, 268 Ga. 28, 29 (1) (486 SE2d 338) (1997). At trial, the mother testified that Turney chased her into their bedroom, then hit, beat and dragged her. Their three-year-old child, the victim as to the cruelty charge, was standing just outside the bedroom door and began screaming at Turney to stop hurting her mother and to let her go. Turney yelled that he was going to "get rid of this piece of trash of a mother she had," and then ordered the child to go back to her room. Turney then dragged the mother through the house, pulled her outside and said he was going to kill her. The mother retrieved her car keys, and as she was driving away, Turney fired a gun at her. Just after the incident, the child told an investigator that Turney was trying to kill her mother. Although the child was young and not very articulate, at trial she testified affirmatively when asked if Turney did something bad to her mother, hurt her mother and scared her. The child's sister testified that she awoke during the incident and

saw the three-year-old run past her room with a frightened look on her face. The evidence was sufficient for a rational trier of fact to find Turney guilty beyond a reasonable doubt of cruelty to children. See generally *Hall v. State,* 261 Ga. 778, 782 (7) (b) (415 SE2d 158) (1991).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 20, 1998.

*James E. Hardy II,* for appellant.

*Lydia J. Sartain, District Attorney, Allison B. Goldberg, Assistant District Attorney,* for appellee.