A99A1039. PUCKETT v. THE STATE.
(521 SE2d 634)

ELDRIDGE, Judge.

Steven Glenn Puckett appeals a Fayette County State Court's denial of his plea in bar. In addition, he challenges the trial court's denial of his motion to suppress the results of his breath test. We affirm the trial court's rulings.

1. Following his arrest, Puckett faced two state law offenses: OCGA § 40-6-391 (a) (1), DUI — less safe driver; and OCGA §§ 40-6-48 and 40-6-1, failure to maintain a lane. In addition, Puckett was charged with a violation of § 14-2 of the Peachtree City Code of Ordinances, resisting/interfering with arrest. In the Peachtree City Municipal Court, Puckett filed a motion requesting to have all three charges bound over to the State Court of Fayette County for a jury trial. The municipal court bound over the two state charges, but kept jurisdiction over the municipal offense. Puckett was found guilty on the municipal offense.

Thereafter, based on double jeopardy grounds, Puckett filed in the Fayette County State Court a plea in bar as to the state law offenses, contending that, pursuant to OCGA § 16-1-7 (b), the State

---

was required to prosecute Puckett for all crimes arising from the same conduct, and thus, the State's failure to prosecute the DUI and failure to maintain a lane offenses in conjunction with the ordinance violation resulted in a statutory bar as to the untried state law offenses. The trial court disagreed and denied the plea in bar. We concur in that judgment.

OCGA § 16-1-7 (b) provides that "[i]f the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and *are within the jurisdiction of a single court*, they must be prosecuted in a single prosecution." (Emphasis supplied.)

Puckett is correct that, initially, the Peachtree City Municipal Court had jurisdiction over all three offenses. However, when Puckett filed his motion requesting a jury trial, the municipal court was divested of jurisdiction over the state law offenses of DUI and failure to maintain a lane. OCGA § 40-13-23 (a);[1] see also OCGA § 15-9-30.6 (c). The municipal court retained jurisdiction over the ordinance violation. *Kolker v. State*, 260 Ga. 240 (391 SE2d 391) (1990). Accordingly, there was no error in disposing of the ordinance violation in municipal court, while binding over the state law offenses for a jury trial in state court, as per Puckett's request. "OCGA § 16-1-7 (b) does not preclude successive state and municipal prosecutions, only successive prosecutions for state crimes." (Citation and punctuation omitted.) *Dickinson v. State*, 191 Ga. App. 467, 468 (382 SE2d 187) (1989). See also *Fuller v. State*, 169 Ga. App. 468, 469 (313 SE2d 745) (1984). Notably, "[o]ne cannot complain of a judgment, ruling or result he has procured or aided in causing by his own strategy, tactics or conduct. [Cits.]" *Turney v. State*, 235 Ga. App. 431, 433-434 (509 SE2d 670) (1998).

2. Puckett claims error in the trial court's denial of his oral motion in limine to suppress the result of his blood alcohol test. This enumeration is bottomed on the following set of facts, construed "most favorably to the upholding of the trial court's findings and judgment":[2]

At just after midnight on March 28, 1996, Captain S. Pye of the Peachtree City Police Department concluded his tour of duty on the evening shift. It had been raining very heavily that evening; "[t]he

---

[1] No court defined in this article [municipal and probate courts] shall have the power to dispose of traffic misdemeanor cases as provided in this article unless the defendant shall first waive in writing a trial by jury. If the defendant wishes a trial by jury, he shall notify the court and, if reasonable cause exists, he shall be immediately bound over to the court in the county having jurisdiction to try the offense, wherein a jury may be impaneled.
OCGA § 40-13-23 (a).

[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

rain had literally been a downpour, just a torrential downpour, up until 11:30 [p.m.]" A deputy was driving Pye home when the officers spotted "on Peachtree Parkway south, right there at Center Green, there was a large area of grass and mud that had been disturbed obviously by a vehicle. . . . The median was very torn up. A lot of mud displaced in the median, a lot of grass throwed [sic] every-where." It was clear that a motor vehicle had done the damage.

> The vehicle had entered the median, slid to the driver's side, slid to the left, come within just a matter of four to six inches, probably, of hitting a Bradford Pear there in the median of the road. It came back on the road slightly, went back into the median tearing the grass again and exiting back out of the median almost rolling over into a four-inch-high curb.

The vehicle left a mud trail originating from the damaged area in the median, which trail the officers followed. "From that point on, there was a steady trail of huge clumps of mud and mud debris and grass on the left-hand lane as you're heading south on Peachtree Parkway. It was just like somebody had left a stream from there to where the vehicle was finally located." The trail ended at appellant Puckett's residence on Brookwood Drive.

> Right in the driveway was — I believe the truck color was black and gray, black and silver-colored truck, if I am not mistaken[,] . . . on the driver's side of the truck, there was still, indeed, wet, fresh dripping mud actually dripping off and hitting the ground while we were sitting out front of the house radioing the tag in of the vehicle.

In addition, "[t]he whole hood of the truck, the engine compartment of the truck, was still hot. The engine hood was still warm to the touch."

Captain Pye knocked on the front door of the residence. Puckett answered the door.

> As soon as he opened the door, there was an immediate odor of alcoholic beverage that hit me when he opened the door . . . there was an immediate odor of an alcoholic beverage coming from his direction and from his . . . it appeared to me his person. . . . His eyes were red and bloodshot and watery.

Pye asked to see Puckett's license and insurance. Upon such request, Puckett exited the house and retrieved his license and proof

of insurance from the truck.[3] At that time, it was ascertained that the odor of alcohol was indeed emanating from Puckett's person. While Puckett was getting his license and insurance, Pye spoke with Puckett's fiancee, who confirmed that they had recently returned from dinner where they had "had some drinks." Puckett's fiancee stated that they had consumed no alcohol since returning home from dinner.

Thereafter, in the driveway beside the truck, Pye interviewed Puckett. "I walked outside to the pickup truck. . . . At that time I advised Mr. Puckett of his *Miranda* rights. We were standing at the — I think the left front headlight of his truck right in front of his garage when I was reading the card." At first Puckett stated that there was mud on his truck because "he had to pull a friend out of a mud hole at 3:30 that afternoon." However, when Pye expressed doubt that the mud could have remained on the truck since 3:30 with the amount of rain that had fallen, Puckett admitted to Pye that "well, the mud could've came up when I drove home from going to dinner and back." Puckett also admitted that he had consumed alcohol during dinner.

At that time, in the driveway beside the truck, Pye placed Puckett under arrest.

> I told him, I said, you need to go [in]side and you need to get some shoes. I said I am going to ask you to come down to the station to take a DUI test and we are also going to finish talking about the damage to city property. . . . So once we left from the truck and went inside, he walked in and walked to the right where I just described was the kitchen, living room area. At that time I started reading his Implied Consent.

Puckett was transported to the precinct where a breath test was administered. His blood alcohol content registered .18.

Puckett contends that his arrest was illegal because (a) the officers arrested Puckett "without probable cause, without a warrant and without seeing Appellant commit a crime in their presence or within their immediate knowledge as prohibited by OCGA § 17-4-20"; and (b) pursuant to *Steagald v. United States*, 451 U. S. 204 (101 SC 1642, 68 LE2d 38) (1981), Puckett "was arrested in his home

---

[3] Puckett retrieved his license and insurance from the truck while barefoot: "I [Pye] even asked him made a comment to him, 'Do you want to get some shoes?' And he [Puckett] said, no, that is fine, and walked out to the truck barefooted, wet ground, to produce the insurance."

without a warrant and without exigent circumstances."[4] Thus, Puckett contends that the results of his breath test should have been suppressed as a consequence of an illegal arrest. We disagree with Puckett's contentions.

(a)

A warrantless arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.

(Citations and punctuation omitted.) *Bishop v. State*, 268 Ga. 286, 288 (2) (486 SE2d 887) (1997); *Davis v. State*, 203 Ga. App. 227 (416 SE2d 771) (1992); see also OCGA § 17-4-20 (a).

Here, there was probable cause for arrest because, based on the officer's personal observations and initial investigation which included the non-custodial interviews with both Puckett and his fiancee: (1) Puckett drove his truck immediately after consuming alcohol with dinner; (2) during the ride home from dinner, Puckett lost control of his truck, twice swerving it off the roadway and onto the median, barely missing a tree; (3) Puckett only recently exited the truck at his residence since his truck's engine was still warm and fresh mud was still dripping from the body of the truck; (4) the only alcohol consumed by Puckett was just prior to his recent drive home; and (5) shortly after exiting the truck, Puckett still smelled of alcohol and his eyes were bloodshot and watery. Accordingly, Pye "knew facts and circumstances, based on reasonably trustworthy information, sufficient to warrant a prudent man to believe that [Puckett] had committed an offense," i.e., driving while under the influence of alcohol to the extent that he was a less safe driver pursuant to OCGA § 40-6-391 (a) (1). (Citations and punctuation omitted.) *Cothran v. State*, 177 Ga. App. 58 (1) (338 SE2d 513) (1985); *Ellis v. State*, 164 Ga. App. 366-367 (2) (296 SE2d 726) (1982).

(b)

Except in such special situations, [the United States Supreme Court has] consistently held that the entry into a home to conduct a search or make an arrest is unreasonable

---

[4] We note that, both before this Court and the court below, Puckett has contested neither the officer's investigation pursuant to *Terry v. Ohio*, 392 U. S. 1, 23 (88 SC 1868, 20 LE2d 889) (1968), nor the scope of such investigation which led to the development of probable cause to arrest.

under the Fourth Amendment unless done pursuant to a warrant. See *Payton v. New York*, 445 U. S. 573 [(100 SC 1371, 63 LE2d 639)] (1980); *Johnson v. United States*, 333 U. S. 10, 13-15 [(68 SC 367, 92 LE 436)] (1948).

*Steagald v. United States*, supra at 211-212.

However here, pursuant to Captain Pye's testimony, Puckett was not arrested in his home; he was arrested in his driveway when Pye told him that they were going inside to get Puckett's shoes, because Puckett was going to the station for a "DUI test."[5] *State v. Nelson*, 261 Ga. 246 (1) (404 SE2d 112) (1991). Accordingly,

[t]here was . . . evidence adduced at the hearing from which the trial court was further authorized to find that appellant's arrest had occurred [in the driveway] of his house, after he had complied with the request of a police officer to step outside. An arrest of appellant under such circumstances would not constitute an arrest which was made inside his home. *Mincey v. State*, 251 Ga. 255, 260 (6) (304 SE2d 882) (1983). See also *United States v. Santana*, 427 U. S. 38, 41 (II) (96 SC 2406, 49 LE2d 300) (1976) (holding that, for Fourth Amendment purposes, one who is in the threshold of his dwelling is in a public place and not within the dwelling). Accordingly, appellant's reliance on *Payton v. New York*, [supra], [*Steagald v. United States*, supra], and similar cases as authorizing the grant of his motion to suppress is misplaced. All of those cases involved the warrantless entry by the police *into* the private living quarters of the accused for the purpose of making an arrest or of conducting a search therein. Appellant's cited cases are, therefore, factually distinguishable and they are, for that reason, legally inapposite. [Cit.] It follows the trial court did not err in denying appellant's motion to suppress.

(Punctuation omitted; emphasis in original.) *Keyser v. State*, 187 Ga. App. 95-96 (369 SE2d 309) (1988). See also *Collins v. State*, 191 Ga. App. 289, 292 (7) (381 SE2d 430) (1989); *Malpass v. State*, 173 Ga. App. 690, 691 (327 SE2d 753) (1985).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

---

[5] "Under our statute a person is under arrest whenever his liberty to come and go as he pleases is restrained, no matter how slight such restraint may be. OCGA § 17-4-1." (Citation and punctuation omitted.) *State v. Nelson*, 261 Ga. 246, 247 (1) (b) (404 SE2d 112) (1991). "An arrest is complete whenever the liberty of a person to come and go as he pleases is restrained, even though the arresting officer does not expressly inform the person that he is under arrest." *Williams v. State*, 166 Ga. App. 798, 799 (1) (305 SE2d 489) (1983).

DECIDED AUGUST 11, 1999

*Lee Sexton*, for appellant.
*Steven L. Harris, Solicitor*, for appellee.