521 S.E.2d 657 (1999)
239 Ga. App. 602
CHASTAIN
v.
The STATE.
No. A99A0792.
Court of Appeals of Georgia.
August 13, 1999.
*658 Pickett, Pickett & Pickett, Will H. Pickett, Jr., Jasper, for appellant.
Roger G. Queen, District Attorney, for appellee.
BLACKBURN, Presiding Judge.
Following a jury trial, Barry C. Chastain was convicted of one count of cruelty to children and acquitted on the child molestation charge with respect to C.C., his fifteen-year-old niece. Chastain was acquitted on the multi-count indictment on counts of child molestation, cruelty to children, and attempted rape with respect to B.F., C.C.'s older sister. Chastain contends the trial court erred in denying his motion for new trial because the evidence was insufficient to support the verdict, that he was entitled to a directed verdict on Count 2, that the court erred in admitting similar transaction evidence, and that the court erred in failing to sua sponte recuse herself. For the following reasons, we affirm.
1. In enumerations of error, 6, 7, 8 and 10, Chastain challenges the sufficiency of the evidence supporting his conviction for cruelty to children with respect to victim C.C.
On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Chastain] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The standard for reviewing a denial of a motion for a directed verdict of acquittal is whether under the rule of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. Moreover, the test established in Jackson is the proper test for us to use when the sufficiency of the evidence is challenged, whether the challenge arises from the overruling of a motion for directed verdict or the overruling of a motion for new trial based upon alleged insufficiency of the evidence.
(Punctuation omitted.) Redd v. State, 232 Ga.App. 666(1), 502 S.E.2d 467 (1998). *659 Viewed in this light, the record reveals the following:
C.C., who was born on January 17, 1981, testified that between June and September 1996, she stayed with her father in his home in Pickens County on weekends per her parents' divorce visitation agreement. C.C.'s uncle, Chastain, often stayed there, too. C.C. testified about several incidents that occurred there while her father was away at work: One evening, while C.C. was watching television, Chastain pulled off his shorts and underwear, and exposed his penis to C.C. Chastain remained on the couch like that until C.C.'s father called to say he was coming home. Chastain then covered himself up and pretended to be sleeping. On another occasion, Chastain came into the living room room while C.C. was watching television, laid down on the couch, pulled his shorts down, and began touching his penis. He asked C.C. if he could brush her hair. C.C. said "no," and left the room. On another occasion, as C.C. was preparing to go to school, she walked by Chastain, who was lying on the couch under a blanket. Chastain grabbed C.C.'s arm, and pulled her hand over his body down toward his groin area. C.C. pulled away so forcefully that she injured herself on the wooden arm of the couch. Then, after C.C. had returned home from getting a manicure, Chastain, who was sitting on the couch, asked to see C.C.'s nails. C.C. refused, initially, because she was afraid Chastain would grab her arm again. After swearing not to do anything to her, C.C. put her hand out to show her nails and Chastain grabbed it. He pulled her hand toward his penis, but C.C. pulled away, her hand grazing his belt-line. C.C. ran to her bedroom and locked her door.
C.C. testified that she was afraid of what Chastain would do and began sleeping with her bedroom door locked. She was confused and troubled by these incidents and did not speak out at first because she did not want to hurt her uncle. However, after Chastain came knocking at her bedroom door early one morning, she decided to confide in her mother, who called the police. C.C. gave statements to the police. The state introduced evidence of similar incidents involving B.F., C.C.'s older sister, and five other girls, as well as the testimony of her father, mother, and police, all of whom to a varying extent corroborated certain details of C.C.'s testimony. C.C.'s father testified that C.C. was "more upset than I've seen her in her whole life. She was crying so hard she could hardly tell us about it." Since these incidents occurred, C.C. has been in counseling. C.C.'s counselor testified about the anxiety, depression, withdrawal, and other symptoms of mental anguish C.C. suffered as a result of the abuse.
A person commits the offense of cruelty to children in the first degree when he maliciously causes a child under the age of 18 cruel or excessive physical or mental pain. OCGA § 16-5-70(b). To prove the crime, there must be evidence establishing the age of the children, that the children suffered physical or mental pain, that the pain was cruel or excessive, that the defendant caused the pain, and that the defendant acted maliciously in so doing. Hopkins v. State, 209 Ga.App. 376, 377(1), 434 S.E.2d 74 (1993).
(a) Chastain argues there is no evidence of malice and that C.C.'s account of how Chastain caused her mental suffering is totally unbelievable. First, determining witness credibility and weighing evidence are not appellate court functions. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. See, e.g., Thrasher v. State, 225 Ga.App. 717-718(1), 484 S.E.2d 755 (1997). In this case, there is sufficient evidence to support the jury's finding that Chastain's acts caused C.C. cruel and excessive mental pain. Second, as we have explained,
[a]s for malice, "for purposes of this Code section, malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question *660 of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."
Sims v. State, 234 Ga.App. 678, 681(1)(b), 507 S.E.2d 845 (1998). Given the facts of this case, malice can be inferred: C.C. was a child, relatively powerless, who depended upon Chastain as an uncle and authority figure to care for her and to behave responsibly. Chastain should have known that his actions would cause his niece feelings of fear, isolation, confusion, and shame.
(b) Chastain argues that because he was acquitted of Count 1, the child molestation charge involving C.C., a conviction for cruelty to children was "repugnant" because an acquittal for child molestation necessarily includes a finding against a fact that is essential for the cruelty to children charge. We do not agree. The cruelty to children charge was not based upon the child molestation charge, and it does not contain the same allegations. Count 2 does not require a finding that Chastain intended to arouse his or C.C.'s sexual desire. Therefore, an acquittal of the child molestation charge does not require an acquittal on the cruelty to children charge. See Turney v. State, 235 Ga.App. 431, 434-435(2), 509 S.E.2d 670 (1998). Moreover,
in light of the abolition of the inconsistent verdict rule in criminal cases in Georgia, the sole issue is whether the evidence was sufficient to authorize a rational trier of fact to find [Chastain] guilty of cruelty to children beyond a reasonable doubt. See White v. State, 268 Ga. 28, 29(1), 486 S.E.2d 338 (1997).
Id. at 435(2), 509 S.E.2d 670.
2. In his first five enumerations of error, Chastain argues that the trial court erred in admitting evidence of similar transactions involving witnesses C.W., A.H., P.L., R.H., and D.H. Following a pre-trial hearing held pursuant to Uniform Superior Court Rule 31.3(B) on the prosecutor's notice of intent to introduce similar transactions, the court found the incidents sufficiently similar and admitted them. Chastain did not file a motion in limine to exclude the evidence. He did not ask for a continuing objection to the similar transaction evidence nor did he make an objection to the similar transaction evidence on that basis when it was admitted in the case-in-chief. Consequently, any error is waived. As we have held:
[e]ven though a defendant challenges similarity at the pretrial hearing, he waives this ground by failing to assert it when the evidence is introduced at trial. But if a pretrial motion in limine is denied, the losing party need not renew his objection when the evidence is introduced at trial in order to preserve the issue.... [T]he rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it. Consequently, [Chastain's] failure to object to the similar transaction evidence at trial waived further review of the issue.
(Footnotes omitted.) McClarity v. State, 234 Ga.App. 348, 349(2), 506 S.E.2d 392 (1998); Smith v. State, 268 Ga. 42, 43(3), 485 S.E.2d 189 (1997); Davis v. State, 229 Ga.App. 787, 789(2), 494 S.E.2d 702 (1997).
Moreover, the trial court did not abuse its discretion in determining that the similar transaction evidence was sufficiently similar in any event. See Swift v. State, 229 Ga.App. 772, 774-775, 495 S.E.2d 109 (1997).
3. In his ninth enumeration of error, Chastain argues that the trial judge should have recused herself because either she or her former law firm represented witness Dinah Dinsmore in her divorce from Chastain. Dinsmore gave testimony against Chastain regarding a similar transaction involving C.W., who is Dinsmore's daughter from a previous marriage. Although the State and Chastain both acknowledge in their briefs that the judge's connection to Dinsmore was disclosed and discussed prior to trial, Chastain failed to elaborate on the nature and extent of that connection, to provide any citation to the record which reveals either a motion to recuse or a bench conference on the issue, or to present any argument explaining why recusal was required.
Any analysis of the necessity for recusal is necessarily fact-bound, requiring an examination of the nature and extent of any *661 business, personal, social or political associations, and an exercise of judgment concerning just how close and how extensive (and how recent) these associations are or have been [to mandate recusal].
Sears v. State, 262 Ga. 805, 806(1)(b), 426 S.E.2d 553 (1993). If the judge did represent Dinsmore in a prior divorce action, that alone would not have been a basis for disqualification under OCGA § 15-1-8(a)(3) because although Chastain was party to the divorce, that proceeding was a transaction involving different issues and evidence and was entirely separate from the criminal trial. See Cox v. State, 85 Ga.App. 702, 703-704(1), 70 S.E.2d 100 (1952). Therefore, it was incumbent upon Chastain to demonstrate that the judge's impartiality might reasonably be questioned. See Baptiste v. State, 229 Ga. App. 691, 693-694(1), 494 S.E.2d 530 (1997). This he failed to do. Not only did Chastain fail to make such a showing in a proper motion to recuse, he has not supported this enumeration of error with appropriate argument and citation to the record. Because there is nothing before us to review, we deem this enumeration of error abandoned. Court of Appeals Rule 27. See Hunter v. State, 201 Ga.App. 9-10(2), 410 S.E.2d 204 (1991).
Judgment affirmed.
BARNES and ELLINGTON, JJ., concur.