S97A0049. WHITE v. THE STATE.
(486 SE2d 338)

BENHAM, Chief Justice.

Appellant Maurrice Julius White was convicted of malice murder in connection with the death of James Miller, a taxicab driver in Vidalia, Georgia.[1] The taxicab company's dispatcher testified that the victim had reported picking up a passenger at a convenience store shortly before he was found fatally wounded in his cab, with three gunshot wounds to his neck and head. Two employees of the convenience store identified appellant's photograph as depicting one of several young men in the store shortly before the homicide. A firearms expert from the GBI Crime Lab concluded from an examination of the bullet fragments recovered from the victim's body that the bullets had been fired from a .32 caliber revolver. The State introduced statements given to police by a now-deceased juvenile in which the juvenile stated that he had loaned a .32 caliber gun equipped with five bullets to appellant the evening before the taxicab driver was shot, and that appellant had returned the weapon a day or two later with only one bullet. Another witness testified that appellant had told the witness and his brother that appellant had shot the taxicab driver in an attempt to rob him. Unsigned statements of two other

---

[1] The crime occurred on March 14, 1995. Appellant was charged in an indictment returned December 18, 1995, with malice murder and armed robbery. The trial began June 17, 1996, and ended two days later when the jury returned a guilty verdict as to the murder count and acquitted appellant of the armed robbery charge. The trial court sentenced appellant to life imprisonment on June 19, and appellant filed a Notice of Appeal on July 18, 1996. The appeal was docketed in this Court on September 26, 1996, and submitted for decision without oral argument.

witnesses, each stating that appellant had admitted shooting the taxicab driver, were admitted into evidence as prior inconsistent statements after the witnesses denied making the statements. A latent print examiner from the GBI Crime Lab matched known prints of appellant to fingerprints lifted from the interior glass of the right rear window of the victim's taxicab.

1. Appellant suggests that, in light of the jury's acquittal of appellant on the armed robbery charge, the evidence was not sufficient to authorize the jury's guilty verdict on the murder charge. In light of the abolition of the inconsistent verdict rule in criminal cases by this Court in *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216) (1986), the sole question is whether the evidence was sufficient to authorize a rational trier of fact to find appellant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The evidence summarized above was sufficient to meet that standard.

2. As stated earlier, statements given to police by a juvenile deceased at the time of trial were admitted at trial through the testimony of the police detective to whom the statements were given. One statement consisted of the detective's summary of her conversation with the decedent four months after the taxicab driver was slain; the other was a handwritten statement, purportedly written by the juvenile eight months after the crime, and signed by the juvenile, his mother, and the detective. In each statement, it was reported that appellant had borrowed the decedent's .32 caliber revolver and five bullets "to get some money" the evening before the victim was killed, and returned it a day or two later with only one bullet. The gun was not recovered by authorities because, according to the juvenile's statements, the juvenile had thrown it into a dumpster in a neighboring town upon hearing about the taxicab driver's death. The police detective found .32 caliber shell casings at a site where the juvenile was said to have shot the weapon in target practice.

The police detective's testimony, as it related to the deceased youth's statements, was hearsay since its value rested mainly on the veracity and competency of one other than the witness relating it. OCGA § 24-3-1; *Farmer v. State*, 266 Ga. 869 (1) (472 SE2d 70) (1996). The trial court admitted the evidence under the "necessity" exception to the rule against the admission of hearsay. OCGA § 24-3-1. That exception may not be utilized unless two prerequisites are established: (1) that a necessity for the exception exists; and (2) that there is "a circumstantial guaranty of the trustworthiness of the offered evidence — that is, there must be something present which the law considers a substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered." *Higgs v. State*, 256 Ga. 606 (3) (351 SE2d 448) (1987).

The declarant's pre-trial death meets the necessity prong. *Mallory v. State*, 261 Ga. 625 (2) (409 SE2d 839) (1991).[2] As for the second prong, whether there are "circumstances which attribute verity" to the statements (*Roper v. State*, 263 Ga. 201 (2) (429 SE2d 668) (1993)), the trial court made the following findings: with regard to the first statement, the trial court found a substitute for the declarant's oath and cross-examination in that the statement had been voluntarily made to a police officer in the course of an official investigation in the presence of an adult family member after the declarant had received a telephonic admonition from his mother to tell the truth; the statement had never been recanted by the declarant, and had been repeated without material deviation in the declarant's second statement to police. With regard to the second statement, the trial court found circumstantial guarantees of trustworthiness in that the statement was signed by the declarant, had been made to police in the course of an official investigation in the presence of the juvenile declarant's mother, was consistent with the earlier statement, and was never recanted. The trial court also noted that the statement contained information about the murder not known to the general public and was corroborated by the discovery of .32 caliber shell casings at the site the decedent said he went for target practice.

A statement made to a police officer during the course of an investigation has been deemed reliable when it was made shortly after the incident to which it related or shortly after the declarant was contacted by police concerning the incident. See *McKissick v. State*, 263 Ga. 188 (3) (429 SE2d 655) (1993) (statements made by victim within hours of being released from car trunk); *Higgs v. State*, supra, 256 Ga. 606 (5) (statement made within hours of the killing); *Wallace v. State*, 216 Ga. App. 718 (2) (455 SE2d 615) (1995) (statement made right after the shooting); *Patterson v. State*, 202 Ga. App. 440 (4) (414 SE2d 895) (1992) (statement made immediately after declarant was contacted by police); *Adams v. State*, 191 Ga. App. 16 (2) (381 SE2d 69) (1989) (statement made immediately after declarant apprehended). The decedent's statements at issue in the case at bar were made four and eight months after the incident to which they relate, but the first statement was made orally immediately upon the decedent being contacted by the officer, and the second statement was a handwritten reiteration of the oral statement. Because the original statement was made to one the declarant knew to be investigating the events to which the declarant's statement related, and the statement was made immediately after the declar-

---

[2] The juvenile was found dead from a gunshot wound to the head 25 days before appellant's trial. The gun which fired the fatal shot was found at the scene, but some distance from the victim.

ant was contacted by police concerning the incident, the declarant's hearsay statement contains indicia of reliability making it worthy of belief. The fact that the declarant never recanted his statement or sought to change it is also an indicator that the statement is worthy of belief. *McKissick v. State*, supra, 263 Ga. at 189; *Higgs v. State*, supra, 256 Ga. at 608. However, the fact that the two statements are consistent with one another, without more, is "not a satisfactory 'substitute for the oath of the declarant and his cross examination by the party against whom the hearsay is offered.'" *Smith v. State*, 266 Ga. 827 (4) (470 SE2d 674) (1996). The trial court did not err when it admitted the hearsay testimony.

3. Appellant complains that the trial court erroneously limited his cross-examination of the police detective concerning the death of the juvenile whose statements were admitted under the "necessity" exception to the hearsay rule. Appellant contends the trial court's ruling made him "unable to properly pursue in the presence of the jury information that may have shown a suicide motive. . . ." At a hearing outside the presence of the jury, a detective testified that the investigation into the juvenile's death was ongoing and that possible circumstances of the death, i.e., suicide, accidental shooting, involvement of others, could not be excluded until the autopsy and crime lab reports were received. When defense counsel stated her intention of examining the witness before the jury about the possibility of suicide as the cause of death, the trial court ruled out questions "that tend to be speculative," and limited the witness's testimony to what she knew. Before the jury, the witness testified that the circumstances of the juvenile's death, including the possibility it was a suicide, were not yet resolved. Thus, appellant successfully brought to the jury's attention the possibility that the juvenile had taken his own life. Any testimony from the non-expert witness about possible reasons why the juvenile might have committed suicide was correctly ruled speculative and inadmissible by the trial court.

4. Appellant next contends his character was impermissibly placed in evidence and the trial court erred when it denied his motion for mistrial and failed to give curative instructions to the jury. The contested evidence made its appearance when, in response to a question asking what the defendant had told him about the taxicab driver's murder, a witness testified that appellant told him and his brother, about a week after the crime, that he had shot the taxicab driver and needed cocaine "to calm his nerves." After the trial court overruled a hearsay objection, the assistant district attorney asked the witness if it was his testimony that initially appellant had asked the witness's brother for cocaine to calm his nerves. Appellant thereafter sought a mistrial on the ground that his character had been placed in issue by the testimony concerning his purported need for

cocaine. The trial court denied appellant's motion for mistrial. Appellant did not request curative instructions and none were given. See *Brown v. State,* 190 Ga. App. 324 (6) (378 SE2d 908) (1989), where the court noted that a motion for mistrial is not the equivalent of a request for curative instructions.

When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. *Stanley v. State,* 250 Ga. 3 (2) (295 SE2d 315) (1982). Whether the statements are so prejudicial as to warrant a mistrial is within the trial court's discretion. *Sabel v. State,* 250 Ga. 640 (5) (300 SE2d 663) (1983), overruled on other grounds, *Massey v. Meadows,* 253 Ga. 389 (321 SE2d 703) (1984). A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including "the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." *Sabel v. State,* supra, 250 Ga. at 644. See also *Wright v. State,* 253 Ga. 1 (3) (316 SE2d 445) (1984). While it was error to allow the reference to the defendant's purported need for cocaine (see OCGA § 24-9-20 (b)), in view of the unintentional nature of the statement (see *Guess v. State,* 264 Ga. 335 (4) (443 SE2d 477) (1994)), and the overwhelming evidence of appellant's guilt, including his fingerprints at the scene and his statements to others admitting commission of the crime (*Wright v. State,* supra, 253 Ga. at 4; *Bell v. State,* 179 Ga. App. 491 (1) (347 SE2d 321) (1986)), we conclude the trial court did not abuse its discretion in denying the motion for mistrial.

5. Appellant next contends that the trial court improperly admitted the fingerprint evidence, i.e., fingerprint cards, because a proper chain of custody was not established. "A fingerprint card . . . may be admitted into evidence without the showing of a chain of custody since it can be readily identified by reference to the subject's fingerprints." *Hill v. State,* 254 Ga. 213 (3) (326 SE2d 757) (1985). See also *Blige v. State,* 264 Ga. 166 (2) (441 SE2d 752) (1994); *Roland v. State,* 137 Ga. App. 796 (224 SE2d 846) (1976). Cases wherein the appellate court determined that a proper chain of custody was established for fingerprint evidence are not authority for the proposition that a chain of custody *must* be established in order for such evidence to be admitted. See, e.g., *Montgomery v. State,* 155 Ga. App. 423 (5) (270 SE2d 825) (1980); *Tippins v. State,* 146 Ga. App. 448 (2) (246 SE2d 458) (1978).

Appellant correctly points out on appeal that the fingerprint lift cards admitted into evidence were never identified by the crime scene technician as the cards he prepared. See *Roland v. State,* supra, 137 Ga. App. 796 (3), where the Court of Appeals stated that

"fingerprints are the type of evidence which need only be properly identified before their admission into evidence." See also *Gildea v. State*, 184 Ga. App. 105 (1) (360 SE2d 657) (1987), where the court ruled that a proper foundation for the admission of a fingerprint lift card was established through the testimony of the person who prepared it at the scene. Because appellant did not challenge the admission of the cards on this ground at trial, we will not consider it further. *Knight v. State*, 266 Ga. 47 (3) (464 SE2d 201) (1995).

6. When two of the State's witnesses denied they had told a police detective that appellant had told them he had shot the victim, the State was permitted to introduce, through the testimony of the police detective, the witnesses' prior statements inconsistent with their trial testimony. Our holding in *Gibbons v. State*, 248 Ga. 858, 862 (286 SE2d 717) (1982), makes it clear that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence. . . ." The fact that the witness might be one involved in the crime does not make his prior inconsistent statements inadmissible. See *Brown v. State*, 266 Ga. 633 (2) (469 SE2d 186) (1996), where this Court held that the prior inconsistent statement of a co-conspirator who testifies at trial and is subject to cross-examination is admissible as substantive evidence.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur in the judgment only as to Division 2.*

DECIDED MAY 12, 1997.

*Kathy S. Palmer,* for appellant.

*Richard A. Malone, District Attorney, William S. Askew, Assistant District Attorney, Michael J. Bowers, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.