## A01A0062. REECE v. THE STATE.
### (550 SE2d 414)

MILLER, Judge.

While executing a search warrant, investigators discovered a large quantity of marijuana on the premises of George Marvin Reece. Subsequently, a jury convicted Reece of possession of marijuana with intent to distribute. The linchpin of the prosecution's case was the contraband confiscated during the search, evidence that Reece tried without success to suppress. Following the denial of a motion for new trial, Reece filed this appeal. Reece now contests three rulings by the trial court: (1) the denial of his motion to suppress evidence found during the search of his home; (2) the admission of his statement at trial; and (3) the denial of his motion for new trial on the basis of an ineffective assistance of counsel claim. After considering each of these issues, we affirm.

The underlying case arose after Hall County Sheriff's Department investigators obtained a warrant to search the shop and residence of Reece to look for "[s]tolen vehicles, stolen trailers, stolen vehicle parts and components, vehicle titles, tag receipts, and vehicles with no vehicle identification numbers [('VIN')]." This search resulted in a multi-count indictment against Reece for two counts of theft by receiving, three counts of violating the Motor Vehicle Chop Shop and Stolen and Altered Property Act ("Chop Shop Act"), two counts of criminal use of articles with altered identification, possession of methamphetamine, and possession of marijuana with intent to distribute.

After protracted deliberations, the jury deadlocked on three charges: theft by receiving a stolen Camaro, a Chop Shop Act violation involving the Camaro, and a count involving an altered VIN on a dual axle trailer. The jury acquitted Reece on four counts. Reece was convicted only on the count for possessing marijuana with intent to distribute.[1]

1. Reece contends that the trial court erred in denying his motion to suppress evidence that had been obtained as a result of a search warrant that was issued illegally and executed improperly.

(a) When reviewing a ruling on a motion to suppress, this Court must construe the evidence most favorably toward upholding the trial court's findings and judgment, unless they are clearly erroneous.[2] The trial court's findings, even when based on conflicting evidence, should not be disturbed if supported by any evidence.[3] "The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed."[4] The specific question here is whether, taking a common sense approach, the information presented to the issuing magistrate showed a reasonable probability that contraband would be found in the place to be searched.[5]

When so considered, the affidavit presented to the magistrate is replete with detailed information indicating that contraband would likely be found on the premises sought to be searched. According to that affidavit, within the last five days Murphy, an experienced auto theft investigator, had interviewed a confidential informant ("CI") who "did personally observe various stolen motor vehicles, their parts and components, and a stolen enclosed trailer being kept and stored at the above described premises." Murphy testified that the CI "had seen vehicle identification plates that were not on vehicles, as well as matching titles and tag receipts, for those plates." The CI told Murphy that "the premises [are] used for removing [VINs] on stolen vehicles and replacing them with [VINs] from wrecked or salvaged vehicles and that this is an ongoing activity." Murphy vouched for the informant's veracity and reliability, testifying:

[The CI] has in the past provided affiant with information which has led to the recovery of three stolen vehicles, two stolen trailers, and three sets of altered serial numbers. [The CI] has also provided affiant with information in the

---

[1] The State nolle prossed Count 7 accusing Reece of altering the identification number on a generator.

[2] *Karim v. State*, 244 Ga. App. 282, 283-284 (2) (535 SE2d 296) (2000).

[3] *Small v. State*, 243 Ga. App. 678 (1) (534 SE2d 139) (2000).

[4] (Citations omitted.) *Keller v. State*, 169 Ga. App. 596 (314 SE2d 255) (1984).

[5] *Perkins v. State*, 220 Ga. App. 524 (1) (469 SE2d 796) (1996).

past which has led to the arrest of at least one person for a felony theft violation. [The CI] has in the past provided [another] Law Enforcement Officer with the Georgia Bureau of Investigation [("GBI")] with information which has led to the recovery of other stolen motor vehicles, their parts and components as well as with information which has led to the arrest of at least one person for felony theft violations.

Murphy testified that it was his belief that the premises at issue were being used to operate a "chop shop" and "to store both altered identification plates and identification plates from wrecked or salvaged vehicles and trailers."

None of the facts or information about which Murphy testified was shown to have been false or unreliable. Therefore, we hold that the magistrate had a substantial basis for finding the existence of probable cause.[6] Since the warrant was valid, the trial court did not err in denying the motion to suppress.

(b) Reece also faults the execution of the search warrant. He argues that officers exceeded the permissible scope of the warrant by including the use of drug dogs and by expanding the scope of the search to look for drugs. Reece argues that the marijuana evidence used against him would not have been discovered without an alert by the K-9 unit.

At the suppression hearing, Murphy testified that he and Sergeant David Spillers coordinated a search team composed of 12 to 14 law enforcement officers including GBI agents. According to Murphy, Spillers made arrangements for a K-9 drug detection unit from the Department of Corrections to provide assistance. When asked why the services of the K-9 unit were obtained, Murphy conceded that the K-9 unit was present to detect drugs even though drugs were not listed in the search warrant. Murphy explained that because their prior information about the presence of drugs on the premises was "stale," he did not pursue authorization in the warrant to search for drugs. According to Murphy, two drug dogs and their handlers came "somewhat after we arrived."

At the motion hearing, Investigator Greg Bennett, who assisted only in the search of the living room and part of the basement, testified that while in the basement he watched Detective Shane Dalton remove several bags of suspected drugs from a drop ceiling. Bennett saw Dalton pull out "bags of clear plastic sandwich baggies containing [a] green leafy substance." When asked whether drug dogs had been used, Bennett responded, "I believe a dog was called in later. I

---

[6] See *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984).

don't remember seeing a dog until after I had been at the residence for some time." Bennett testified that he did not see a drug dog until after he himself had found other drugs, the suspected methamphetamine, upstairs.

Defense counsel argued that the search drastically exceeded its permissible scope "by looking in nooks and crannies for things . . . or with ulterior motives." The trial court, however, disagreed, noting that "vehicle titles and tag receipts . . . can be put in very small places." At the conclusion of the hearing, the trial court denied the motion to suppress but reserved ruling on three issues: the seizure of drugs, the seizure of a key to a safety deposit box, and the seizure of certain so-called "private papers." As to the drug evidence the court explained:

> With regard to drugs, I am inclined to think that any drugs that may have been found were found in areas that were permissible to search pursuant to the warrant that was issued so that if in looking for things that were permissible under the warrant you find contraband, law enforcement could certainly seize the contraband. The only thing that raises any concern for me on this at all, and this is what I want you to address, is the presence of drug dogs and what impact that might have on the legality of the location of the drugs.

Ultimately, the trial court denied the motion to suppress in its entirety. At the outset of trial, defense counsel again argued the motion to suppress, but the court refused to alter its earlier ruling.

Plainly, the trial court thoroughly considered the question of whether the drug dogs had performed an impermissible role during the execution of the warrant. By allowing the evidence, the trial court implicitly found that the drug dogs had not done so. The evidence, although conflicting, supports this determination. The contraband was found in the ceiling of a closet in the basement by Officer Eddie Reeves with the help of Dalton. Reeves testified that as he was searching the water heater closet, he noticed loose marijuana down on the floor. According to Reeves, "it was already spread about in the area of the hot water heater . . ." when he saw it and pulled it out. After discovering the loose marijuana at the closet's entrance, Reeves then asked Dalton to go up into the ceiling crawl space to search. Dalton was able to extract the main stash from inside the rafters in a drop ceiling above the closet. Dalton described it as "the most marijuana I had ever seen." Reeves testified that "[w]e surmised that rats had gotten into it and strewed [sic] it about." One of the double bags of marijuana admitted in evidence was, in fact, torn and spilling

marijuana. When asked about the role of the K-9 unit, Reeves testified that the drug dogs narrowed the search area "down to the northern corner of that closet." Since the officers had a lawful right to search the closet area and since no evidence shows that Reeves did not make the initial discovery of the loose marijuana leaves on the closet floor independently of the K-9 unit, we cannot say that the trial court clearly erred in finding the evidence admissible.[7]

2. Reece contends that the trial court erred by admitting his custodial statement because the prosecution failed to provide a copy of it to him before trial in violation of OCGA § 17-16-4. The remarks at issue arose when the prosecution asked its witness, "what was that green leafy substance," and Detective Dalton responded, "it was marijuana and Mr. Reece confirmed that when I was speaking to him." After moving to strike the remark, the defense sought a mistrial based on the State's purported noncompliance with statutory discovery rules. Outside the presence of the jury, Dalton testified that while the search continued, he had remained in the living room with Reece and Judy Martin Smith, his co-indictee on the drug charges. Smith grew increasingly impatient with waiting for the search to be completed because she did not want to be late for an appointment. When Reece asked Dalton why Smith could not go to her appointment, Dalton informed him that because some marijuana had been found in the basement, no one could leave. Reece then told Dalton the marijuana belonged to him and he smoked marijuana. Dalton denied asking any questions and testified that Reece just volunteered that information. The trial court decided that Reece's remarks had been freely and voluntarily made and were not the result of a custodial interrogation.

Even though the remarks were otherwise admissible, the State did not provide the requisite notice to the defense about them. When the State fails to comply with OCGA § 17-16-4 (a), the trial court may prohibit the State from introducing evidence improperly withheld from the defense.[8] This sanction, however, applies only when there has been a showing of prejudice to the defense and bad faith by the State.[9] Here, bad faith has not been shown. No mention of Reece's statement appeared in any investigative report. The prosecutor denied knowing about it, claiming that only after the trial was underway did Dalton tell him that Reece said he smoked marijuana. The prosecutor stated, "I had no intent of using that particular statement" because it "would probably bring his character into evidence" and because "that statement I never heard before was not provided

---

[7] See *Karim*, supra, 244 Ga. App. at 284 (2).

[8] *Guild v. State*, 236 Ga. App. 444, 446 (4) (512 SE2d 343) (1999).

[9] *Aleman v. State*, 224 Ga. App. 391, 393 (2) (480 SE2d 393) (1997).

in discovery. . . ." Accepting the prosecutor's explanation, the trial court refused to grant a mistrial, finding "the failure to provide the incriminating statement via discovery was not based on bad faith." After the trial court decided that the comments were admissible as substantive evidence, Smith's counsel probed Dalton for Reece's opinion of Smith's continued detention. On redirect the prosecutor pointedly asked, "what was [sic] the exact words that Mr. Reece made to you," and Dalton responded, "He advised that the marijuana was his marijuana." In these circumstances, the trial court did not abuse its discretion in permitting the remarks to come into evidence.[10]

3. Reece contends that the denial of his motion for new trial was error because his counsel rendered ineffective assistance to him by waiving the objections to the admission of the drug evidence at trial. During the trial, counsel repeatedly stated, "[n]o objection," when the subject evidence was tendered. Reece claims that he was harmed by this failure.

At trial, when a defendant affirmatively declares he has no objection to the introduction of evidence, he thereby waives any objection that might otherwise have been asserted, including those contained in a motion to suppress.[11] Consequently, the issue of the admissibility of the drug evidence was waived here. Nevertheless, to prevail on an ineffectiveness claim, Reece had to establish not only that his trial counsel's performance was deficient, but also that the deficient performance prejudiced his defense.[12] Failure to satisfy either requirement is fatal to an ineffectiveness claim.[13] Although Reece correctly argues that his trial counsel waived the objections, Reece cannot establish the requisite prejudice since the evidence obtained pursuant to the warrant was, in fact, properly admitted.[14]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED JUNE 7, 2001.

*Turner & Willis, Christopher W. Willis*, for appellant.
*Lydia J. Sartain, District Attorney, Jason J. Deal, E. Paul Stanley, Assistant District Attorneys*, for appellee.

---

[10] See id.
[11] *Dyer v. State*, 233 Ga. App. 770, 771 (505 SE2d 71) (1998).
[12] *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997).
[13] *Brewer v. State*, 224 Ga. App. 656, 657-658 (2) (481 SE2d 608) (1997).
[14] *Dyer*, supra, 233 Ga. App. at 771.