## A02A1586. McCOLLUM v. THE STATE.
(574 SE2d 561)

BARNES, Judge.

Following a second jury trial[1] and the denial of her motion for a new trial, Nan McCollum appeals her conviction for trafficking in amphetamine. She enumerates as error the denials of her motion to suppress and motion for mistrial, and the admission of an unrelated drug seizure as res gestae. After careful review, and finding no error, we affirm.

Viewed in the light most favorable to the verdict, the evidence adduced at trial shows that Matt Atkins, a detective with the Powder Springs Police Department, received information from a confidential informant about drug activity at the residence of Teresa and Bobby McDuffie. Detective Atkins testified that based on the information, he conducted surveillance on the McDuffie residence on two separate

---

[4] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Legg v. State,* 207 Ga. App. 399, 400 (2) (428 SE2d 87) (1993).

[1] McCollum's first trial resulted in a mistrial.

occasions and observed activities that were consistent with drug sales. After retrieving a bag containing methamphetamine residue from the McDuffies' trash, Detective Atkins obtained a search warrant for the residence.

On the day the warrant was executed, April 27, 2000, the informant called Detective Atkins again and told him that "Teresa McDuffie had arranged a deal for a half-ounce of methamphetamine with a white female by the name of Nan." Detective Atkins testified that he had a description of the automobile that Nan would be driving, and when the vehicle pulled up to the McDuffie residence, the officer watching the house notified him. After the surveillance officer called him, Detective Atkins instructed the informant to call the residence, and "she was told that Nan was, in fact, there." At that point, the officers executed the warrant and, upon searching McCollum, discovered weighing scales, approximately $3,000 in cash, and 12 grams of amphetamine in her purse. All of the adults at the residence, including McCollum and Teresa McDuffie, were arrested.

Atkins interviewed McCollum and McDuffie and took a formal statement from McCollum. McCollum admitted that she sold a small amount of methamphetamine to McDuffie earlier that day, but maintained that she was a middleman, and that she was brokering a deal to sell a larger amount of the drug to the McDuffies for someone else. McDuffie told the officer that she had gone to McCollum's house that day to pick up a car seat and denied purchasing contraband from McCollum.

As a result of this information, the following day, April 28, 2000, Atkins called Sergeant Brenton Garmon, an officer with the Bartow County Sheriff's Office drug unit. Sergeant Garmon testified that he talked with Atkins, but that before his department could follow up on the information, an investigator with the Bartow County Department of Family & Children Services (DFACS) called requesting that an officer from the sheriff's department accompany her to McCollum's residence to check on McCollum's children. The investigator testified that she received a referral on April 28, 2000, alleging that "three young children in a home were not appropriately supervised and that the mother was incarcerated." She further testified that for safety reasons, it is a common practice to ask someone from the sheriff's department to accompany her. Sergeant Garmon and an investigator with the sheriff's department accompanied the DFACS agent.

When the three arrived at McCollum's residence, Micah Petric, the children's babysitter, was there, but the children were not. Petric said that she was preparing to move and was waiting to be picked up, but gave them her permission to enter the residence. The DFACS investigator testified that she needed to check the residence to insure that "the children were not at home, and we wanted to check the con-

ditions of the home because part of the allegations were that the basic needs of the children were not being met in the home and that there was a dirty home."

Sergeant Garmon and the other officer accompanied the DFACS investigator inside the residence. During the walk-through, he noticed loose pills and a set of postal scales on top of a dresser in the master bedroom. He testified that the items raised his suspicions because the scales are commonly used to weigh illegal drugs. When the DFACS investigator finished checking the residence, the sergeant posted two men and left to secure a search warrant. Subsequently, a shoe box containing approximately 79 grams of amphetamine was recovered from the master bedroom closet.

1. McCollum enumerates as error the trial court's denial of her motion to suppress the evidence obtained in her home, arguing that Sergeant Garmon's affidavit "contained such inaccuracies as to make it clearly unacceptable." Specifically, she contended that Sergeant Garmon's assertion in his affidavit that McCollum admitted that she sold drugs to McDuffie at her residence was factually inaccurate. She also complains that, contrary to the information in the affidavit, McDuffie never admitted that she had seen methamphetamine in McCollum's home.

> When reviewing a ruling on a motion to suppress, this Court must construe the evidence most favorably toward upholding the trial court's findings and judgment, unless they are clearly erroneous. The trial court's findings, even when based on conflicting evidence, should not be disturbed if supported by any evidence. The duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. The specific question here is whether, taking a common sense approach, the information presented to the issuing magistrate showed a reasonable probability that contraband would be found in the place to be searched.

(Punctuation and footnotes omitted.) *Reece v. State*, 250 Ga. App. 1, 2 (1) (a) (550 SE2d 414) (2001).

In his affidavit supporting the warrant, Sergeant Garmon recounted that McCollum was arrested in Powder Springs the previous day for possession of methamphetamine and was found to possess 15 grams of suspected methamphetamine and a large amount of U. S. currency. He further stated that "McCollum also admitted to distributing one gram of methamphetamine to Teresa McDuffie at McCollum's residence, 445 Highway 61 in Cartersville, Georgia early that same day. McDuffie was also arrested with McCollum and she

told officers that she had witnessed McCollum in possession of approximately one-half of a pound of methamphetamine." Attached to the affidavit was Detective Atkins' report of the Powder Springs arrest and a copy of McCollum's written statement. He also described the postal scale and prescription medications he saw lying in plain view at McCollum's residence and asserted that, based on his experience in the narcotics unit, he knew that the scales were "used as a means for weighing illegal narcotics."

While we agree with McCollum that the report did not indicate that any drug transactions occurred at her residence, based on McCollum's statement that "early the day Teresa came [and] met me and Aaron gave me a gram to give her," and McDuffie's statement that she had met with McCollum at her home earlier that day, Sergeant Garmon reasonably concluded that the transaction took place at McCollum's home. Further, even if that portion of the statement were excised from the affidavit, the remaining information is sufficient to show probable cause, given the totality of the circumstances. See *Dorminey v. State*, 205 Ga. App. 806, 807 (1) (423 SE2d 698) (1992). Given the totality of the circumstances, including McCollum's possession of methamphetamine upon her arrest in Powder Springs one day before the warrant was issued, her admission that she had sold McDuffie methamphetamine the day before, McDuffie's statement to Detective Atkins that she saw methamphetamine at McCollum's house, and Sergeant Garmon's observations, the trial court did not err in denying McCollum's motion to suppress.

2. McCollum asserts error in the trial court's admission of the Powder Springs drug seizure in Cobb County as res gestae. McCollum contends that the arrest in Cobb County was not res gestae, because the arrest was "in a separate county, the next day." We do not agree.

We note that, although McCollum enumerates as error the admission of evidence of the Cobb County arrest, her argument focuses primarily on the use of the arrest for the issuance of the search warrant. And, as "'[a]n enumeration of error cannot be enlarged to include other issues not made therein,' [cit.]" *Hurston v. Ga. Farm &c. Ins. Co.*, 148 Ga. App. 324, 326 (2) (250 SE2d 886) (1978), this issue cannot be considered. *Sanders v. Hughes*, 183 Ga. App. 601, 604 (359 SE2d 396) (1987).

As to the admissibility of the evidence, the circumstances of the previous day's arrest in Cobb County were relevant to the issues at trial for the purpose of showing the circumstances of the arrest and need not be excluded simply because they are potentially prejudicial. *Anderson v. State*, 236 Ga. App. 679, 682 (4) (513 SE2d 235) (1999). "The fact that such part of the res gestae incidentally placed [McCollum's] character in issue does not render it inadmissible." (Citations

and punctuation omitted.) *Roberts v. State*, 221 Ga. App. 196, 198 (2) (471 SE2d 27) (1996). Unless clearly erroneous, we will not disturb a trial court's determination that res gestae is admissible. Id. We find no such abuse here.

3. McCollum also asserts as error the trial court's failure to grant a motion for mistrial after Petric, one of the State's witnesses, inappropriately interjected bad character evidence against her.

The complained-of testimony occurred during the direct examination of 18-year-old Petric. First, the State asked Petric how she knew McCollum to which Petric responded, "I've known her since I was about 8 or 9 years old. My parents used to traffic drugs for her." At this point trial counsel objected and moved for a mistrial. The trial court denied the motion and instructed the jury to disregard Petric's response. The trial court also admonished Petric to answer only the questions which were asked.

And later, when the State was questioning Petric about Teresa McDuffie's visit on the day before the warrant was issued, the State asked Petric what McCollum and McDuffie did when the two women were in the bedroom, to which she responded, "I guess Teresa was buying some drugs from her. That's what I figured." McCollum objected, and the trial court sustained the objection, indicating that the question called for speculation. McCollum renewed her motion for mistrial, and the trial court once again denied the motion.

And finally, when Petric was asked who, other than herself and the children, lived with McCollum, she responded that "Aaron was in and out" and "I don't know Aaron's last name. Aaron was the younger guy that, from what I know, was helping Nan sell drugs." McCollum, once again, objected and renewed her motion for mistrial citing the cumulative effect upon her character of the objectionable testimony. The trial court denied the motion, finding no grounds for mistrial because Aaron had already been linked to McCollum and drugs by another witness. The trial court also instructed the jury to disregard the testimony.

Generally, "[t]he general character of the parties and especially their conduct in other transactions are irrelevant matter . . . ," OCGA § 24-2-2, and "no evidence of [a criminal defendant's] general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." OCGA § 24-9-20 (b). A mistrial based on prejudicial matter being improperly presented to the jury is appropriate if it is essential to preserve the accused's right to a fair trial. *White v. State*, 268 Ga. 28, 32 (4) (486 SE2d 338) (1997). "Whether the [statement is] so prejudicial as to warrant a mistrial is within the trial court's discretion." (Citation omitted.) Id. The statement's nature, the other evidence in the case,

and the actions of the court and counsel in dealing with the impropriety are all factors to be considered. Id.

As the State points out, Petric's statement about her parents and McCollum was unsolicited, and the trial court immediately instructed the jury to disregard the testimony. Under these circumstances the trial court did not abuse its discretion in denying McCollum's request for a mistrial. See *Griffin v. State*, 240 Ga. App. 494, 496 (2) (523 SE2d 910) (1999); *Holcomb v. State*, 130 Ga. App. 154, 155 (1) (202 SE2d 529) (1973). With regard to the other statements, Petric "did not tell the jury anything it did not already know about appellant." *Roberts v. State*, 212 Ga. App. 607, 608 (2) (443 SE2d 4) (1994). Thus, we do not find reversible error in denying McCollum's motion for mistrial. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Punctuation and footnote omitted.) *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001).

*Judgment affirmed. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 6, 2002 —
RECONSIDERATION DENIED NOVEMBER 25, 2002.

*Gerard P. Verzaal*, for appellant.
*T. Joseph Campbell, District Attorney, Scott M. Smith, Assistant District Attorney*, for appellee.

