## S05A0873. AGEE v. THE STATE.
(621 SE2d 434)

THOMPSON, Justice.

Defendant Derrick Antwan Agee was convicted of malice murder, four counts of aggravated assault, and possession of a firearm during the commission of a felony.[1] He appeals, asserting, inter alia, the trial court erred in limiting closing arguments to one hour in violation of OCGA § 17-8-73. Finding no reversible error, we affirm.

Damour Richardson was playing basketball with his three brothers and his young son when Agee and his friends joined the game and placed a $100 bet on the outcome. After losing to Richardson's team, Agee picked up the money, pulled a gun, and started shooting. Richardson and his family ran from the basketball court as Agee emptied the chamber of the gun in the victims' direction. Richardson, who was shot in the back, bled to death despite his family's efforts to resuscitate him.

At trial, Richardson's brothers identified Agee as the shooter. Another witness, Marion Pitts, testified that he spoke to Agee about the shooting a few weeks later and that Agee admitted that he shot Richardson because he was "disrespecting" him. According to Pitts, Agee added that although he intended to shoot Richardson, he did not intend to kill him.

1. The evidence is sufficient to enable any rational trier of fact to find Agee guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] The crimes occurred on July 15, 2000. Agee was indicted on December 8, 2000, and charged with malice murder, felony murder predicated on the underlying felony of aggravated assault, five counts of aggravated assault, and possession of a firearm during the commission of a felony. Trial commenced on December 9, 2003; the jury returned its verdict on December 12, finding Agee guilty on all charges. The court vacated the felony murder count and the underlying aggravated assault count in view of the malice murder conviction. On December 17, the court sentenced Agee to life in prison for the malice murder count, to be followed by two consecutive sentences of fifteen years each, and an additional two consecutive sentences of ten years each for the remaining aggravated assault counts, as well as a consecutive sentence of five years for the firearm charge. Agee filed a motion for new trial on December 19. The motion was amended on June 11, 2004, and denied on November 4, 2004. Agee filed a notice of appeal on November 24, 2004. The case was docketed in this Court on February 9, 2005, and submitted for decision on the briefs on April 4, 2005.

2. OCGA § 17-8-73 provides that closing arguments in a capital felony case are to be limited to two hours for each side. This Code section applies to malice murder and felony murder cases regardless of whether the prosecution seeks the death penalty. *Chapman v. State*, 273 Ga. 865, 869 (3) (548 SE2d 278) (2001). "The trial court has no discretion to impose any further limit on the time for closing argument, and failure to afford the parties the full time is, as a matter of law, error. *Hayes v. State*, 268 Ga. 809, 813 (7) (493 SE2d 169) (1997)." (Footnote omitted.) *Chapman*, supra.

> The right to make a closing argument to the jury is an important one, and abridgement of this right is not to be tolerated. Harm, requiring that a defendant be given a new trial, is presumed when the right is erroneously denied, and the presumption of harm, although not absolute, is not readily overcome. [Cits.] The presumption of harm may fall when the denial of the right is not complete and only in those extreme cases in which the evidence of a defendant's guilt is so overwhelming that it renders any other version of events virtually without belief. [Cits.]

*Hayes*, supra.

In this case, prior to closing arguments, the trial court stated: "It's an hour per side. I'll tell you at ten and then at five." Thus, the trial court gave notice to both the prosecutor and defense counsel that closing arguments would be limited to one hour, instead of two. Defense counsel did not insist upon his right to the full time; instead, he remained silent. Thus, defense counsel acquiesced in the court's ruling and waived this issue on appeal. See generally *Smith v. State*, 277 Ga. 213, 218 (11) (586 SE2d 639) (2003) (a contemporaneous objection is required to preserve an issue for review). See also *Hendricks v. State*, 277 Ga. 61, 63 (3), n. 3 (586 SE2d 317) (2003) (failure to object to limitation on closing argument may constitute waiver); *Ricketts v. State*, 276 Ga. 466 (579 SE2d 205) (2003) (counsel's decision not to seek additional time for closing argument can be deemed reasonable trial strategy).

Even if this issue had not been waived, the error was harmless because Agee's right was not denied completely, and the evidence of guilt was so overwhelming as to render any other version of events incredible. *Hayes*, supra. Numerous eyewitnesses identified Agee as the assailant. Although the eyewitnesses did not know Agee previously, and they may have mistakenly thought his street name was

"Dre,"[2] they had ample opportunity to observe him during the time they played basketball together. Moreover, another witness, Pitts, testified Agee admitted shooting Richardson.

3. The trial court did not err in permitting the State to show that Agee shot and killed Steven Lowe after Agee was escorted out of a nightclub in 1997.

> In order for evidence of a similar transaction to be admissible, the State must demonstrate the following: (1) the evidence is admissible for a proper purpose; (2) sufficient evidence exists to establish the accused committed the independent act; and (3) a sufficient connection or similarity exists between the independent offense and the crime charged so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640 (2) (b) (409 SE2d 649) (1991).

*Collins v. State*, 273 Ga. 93, 94 (538 SE2d 47) (2000).

The similar transaction evidence was introduced in this case to show identity, course of conduct, motive and state of mind. Agee was identified as the shooter in the prior incident. And there were sufficient similarities between the independent act and the present act: In both cases, Agee had reason to believe that he was disrespected in front of his friends. In both cases, he resorted to violence with a handgun, shooting the victims as they attempted to flee. And in both cases he fired the weapons numerous times, displaying no regard for the presence of others. The similar transaction evidence was admitted properly. *Campbell v. State*, 278 Ga. 839, 841 (3) (607 SE2d 565) (2005); *Collins*, supra.

4. On direct examination, the State asked Derrick Byrd if a statement he gave previously was truthful. Attempting to explain himself, Byrd responded: "Well, that there pertaining because I thought Mr. Agee had something to do with it. Because like I told you before in your office, Mr. Agee might has [sic] a reputation and everybody on the street. . . ." At that point, Agee moved for a mistrial, asserting his character was put in issue when Byrd mentioned his reputation on the street. The trial court denied the motion. After much colloquy, the trial court agreed to give a curative instruction. Before the instruction was given, however, Byrd was questioned further outside the presence of the jury. When the jury returned, the examination of Byrd continued until the State reminded the court that the curative instruction had not been given. Thereupon, the trial court asked defense counsel if he still wanted the court to give the

---

[2] Agee's street name was "Cisco."

curative instruction. Counsel responded affirmatively and the court instructed the jury that it was to disregard Byrd's reference to Agee's reputation.

Later, during the direct examination of Marion Pitts, the following colloquy transpired:

Q. Now, without going into why you had a meeting did you ever have a meeting with Derrick Agee?
A. Yes, I met him at Amoco.
Q. Okay. And during the course of your meeting with Derrick Agee at Amoco, did you ask him about a shooting at the basketball court?
A. Yes, sir.
Q. Why did you ask him that?
A. We was [sic] just speaking — well, we had the meeting we was [sic] speaking on cocaine and —

Defense counsel then interposed an objection and the court gave a curative instruction. Nevertheless, defense counsel sought a mistrial. Shortly thereafter, Pitts testified that Agee admitted killing Richardson. Asked if he said anything to Agee, Pitts added: "I just asked him why was he catching cases like that and he getting money." Defense counsel asked for a "continuing objection in that area." The trial court replied simply: "The objection is overruled." Later, defense counsel argued that the statement, Agee was "catching cases" and "getting money," required the grant of a mistrial.

> When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. [Cit.] Whether the statements are so prejudicial as to warrant a mistrial is within the trial court's discretion. [Cits.] A trial court's denial of a motion for mistrial based on the improper admission of bad character evidence is reviewed for abuse of discretion by examining factors and circumstances, including "the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety." [Cit.]

*White v. State*, 268 Ga. 28, 32 (486 SE2d 338) (1997).

(a) We find no abuse of discretion in the denial of the motion for mistrial with regard to the testimony of Derrick Byrd. First, we note that the reference to Agee's reputation was unintentional — it was not elicited by the State. Second, the trial court instructed the jury to

disregard the reference. Third, the evidence of Agee's guilt was overwhelming. See *White*, supra.

(b) Likewise, the trial court did not abuse its discretion in denying the motion for mistrial with regard to the testimony of Marion Pitts. Clearly, Pitts' reference to the purpose of the meeting between Pitts and Agee was not elicited by the prosecution; in fact, it contravened the prosecutor's admonition to avoid mentioning the purpose of the meeting. Moreover, the trial court gave a curative instruction and, as pointed out previously, the evidence against Agee was overwhelming. *White*, supra.

(c) With regard to the testimony of Derrick Byrd, Agee also asserts that the trial court erred in failing to give the curative instruction in a more timely fashion. However, this assertion was not raised below and, therefore, will not be addressed on appeal. *Hart v. State*, 227 Ga. 171 (1) (179 SE2d 346) (1971).

(d) Error, if any, in connection with Pitts' statement that he asked Agee "why he was catching cases like that and he getting money" was harmless. Given the strength of the evidence, it is highly unlikely that the statement contributed to the verdict. See *Owens v. State*, 248 Ga. 629 (284 SE2d 408) (1981).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 24, 2005.

*Cromwell & Hibbert, Henry A. Hibbert*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Vonnetta L. Benjamin, Assistant Attorney General*, for appellee.