## A10A0632. SMITH v. THE STATE.
(695 SE2d 86)

PHIPPS, Presiding Judge.

Uriah Joel Smith was tried by a jury and convicted of armed robbery, kidnapping and aggravated assault. The trial court denied Smith's motion for new trial, and Smith appeals. He claims that his trial counsel was ineffective in several respects. Because Smith has failed to demonstrate that his trial counsel provided ineffective assistance, we affirm.

---

[9] Id.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[1] There are two components to this inquiry:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.[2]

When reviewing a trial court's ruling on trial counsel's effectiveness, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[3]

On July 31, 2002, shortly before 10:00 a.m., a masked man entered a First Union bank in Lilburn, approached a bank employee, pointed a gun at her and asked her for money. When she responded that she did not have any money, the man told her to come with him to the bank teller line. The man approached one of the bank tellers with his gun and ordered the teller to put all of the money in a black book bag. The teller complied by emptying his drawer into the bag, and he also put a dye pack in the bag. The man then approached a second teller, pointed a gun at her and ordered her to put all of the money in his black bag. That teller complied by putting some money in the bag. Another bank employee was in her office with a customer when the man entered the bank. He saw them and ordered them to come out into the bank lobby. He pointed a gun at them as they walked out of the office. The robber took approximately $900 from the bank. None of the bank employees was able to describe the robber's facial features, but the bank employees and the customer from the office testified to the robber's race, height and build.

Prior to the robbery, Richard Epstein, a reserve deputy sheriff, saw a young man wearing a mask and a backpack run into the bank with a gun in his hand. Epstein then saw the man run out of the

---

[1] *Strickland v. Washington*, 466 U. S. 668, 686 (II) (104 SC 2052, 80 LE2d 674) (1984).
[2] Id. at 687 (III).
[3] *Suggs v. State*, 272 Ga. 85, 88 (4) (526 SE2d 347) (2000) (footnote omitted).

bank, and instructed another person to notify the police while he followed the man on foot. The man ran to a parking lot, stopping near a maroon car, described by Epstein as either a Ford Taurus or a Ford Contour, with a drive-out license tag. While in the parking lot, the man opened the backpack and then dropped it. According to Epstein, the man's mask came off at that time, which allowed Epstein to observe him for approximately two minutes without the mask. ·Epstein then saw the man drive away in the maroon car. Epstein went to where the man had been and saw money on the ground and a maroon-colored bag that he testified the man had dropped. A black bag was nearby.

Epstein testified that several weeks after the robbery, a police officer had shown him a photographic lineup and he had picked out one of the six pictures therein as being of the man he had seen in the parking lot. At trial, Epstein identified Smith as the man he had seen on July 31, 2002. He testified that he was 100 percent certain that Smith was the person he saw in the parking lot that day.

A police crime scene investigator responded to the bank robbery. In the parking lot where the robber had been seen, she observed a black backpack with some red on it where the dye pack had exploded, a purple backpack and money. The purple backpack belonged to Smith's younger sister, who testified that she had lost it at school several years before.

Smith's mother testified that she owned a burgundy Ford Contour in July 2002, that the car had a drive-out tag, and that Smith, who was 17 years old at that time, drove it on occasion. Smith's mother and older sister testified that on the morning of July 31, 2002, they had driven the Ford Contour from Lilburn to Stockbridge, and did not return to Lilburn until that evening.

1. Smith contends that his trial counsel failed to adequately investigate his case. Specifically, Smith complains that his trial counsel failed to make any effort to locate any witnesses who could have confirmed that Smith's mother and sister had an appointment in Stockbridge on the morning of the robbery, thereby supporting their testimony that they, not Smith, had possession of the car that morning.

At the motion for new trial hearing, trial counsel testified that he followed up on all information he was given with respect to substantiating the claim about the Stockbridge appointment. Smith has not shown that trial counsel's failure to further investigate and present testimony on this issue constituted deficient performance as he neither identified any relevant witnesses nor put forward any

evidence as to the testimony they would have given.[4]

2. Smith contends that his trial counsel erred by failing to file a motion to suppress the photographic array presented to Epstein. He argues that, of the six pictures in the array, his stood out because his hair was longer and he was smiling whereas the other men had "blank" or "unhappy" expressions.

It is not deficient performance for counsel to fail to file a motion which is frivolous.[5] Moreover, "[e]ven if a deficiency did result from trial counsel's failure to file a motion to suppress, [Smith's] burden is to make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed."[6]

> Testimony concerning a pre-trial identification of a defendant should be suppressed if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "(t)his is our suspect."[7]

Here, an investigator assembled six pictures of men bearing similar characteristics, such as the same race and same general age range, similar facial features and hair styles. The photographs appear to have been taken from the same distance, and they display similar backgrounds. The photographic array in the record does not reflect the distinctions cited by Smith to support his claim. Accordingly, "we discern no substantial likelihood of irreparable misidentification, because the photo array does not present an all but

---

[4] See *Crane v. State*, 294 Ga. App. 321, 325 (1) (b) (iv) (670 SE2d 123) (2008); see also *Domingues v. State*, 277 Ga. 373, 374 (2) (589 SE2d 102) (2003) (appellant cannot show prejudice with regard to his assertions that counsel failed to fully investigate the case and call essential witnesses because he made no proffer as to what a thorough investigation would have uncovered or what the essential witnesses would have said); *Roberts v. State*, 244 Ga. App. 330, 332 (2) (b) (534 SE2d 526) (2000) (trial counsel not shown to be ineffective for failing to call witness at trial where witness did not testify at motion for new trial hearing and no evidence in the record supported claim regarding what witness's testimony would have shown).

[5] *Arnold v. State*, 253 Ga. App. 307, 308 (1) (560 SE2d 33) (2002).

[6] Id. (footnote omitted).

[7] *Davis v. State*, 286 Ga. 74, 76 (2) (a) (686 SE2d 249) (2009) (citation omitted).

inevitable identification of [Smith]."[8] Thus, Smith cannot make the requisite strong showing that, had trial counsel filed a timely motion, the photographic array would have been suppressed.[9]

3. Smith contends that his trial counsel erred by failing to object to Epstein's identification of him at trial. But Smith fails to offer any basis upon which his trial counsel should have objected to the identification and cites no authority to support this claim. We therefore deem this contention abandoned.[10]

4. Smith contends that his trial counsel erred by failing to consult an identification expert. But Smith has not shown that the outcome of his trial would have been different had trial counsel obtained and called such a witness.

> To establish the prejudicial effect of trial counsel's failure to present certain evidence, an appellant is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of the case. Absent a proffer of what the testimony of his expert would have been at trial, [Smith] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course.[11]

5. Relying on *Brodes v. State*,[12] Smith contends that his trial counsel erred by failing to object to Epstein's testimony that he was 100 percent certain that Smith was the person he saw in the parking lot. In *Brodes*, the Supreme Court held that it could no longer endorse an instruction authorizing jurors to consider a witness's certainty in his or her identification as a factor to be used in deciding the reliability of that identification and advised "trial courts to refrain from informing jurors they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of that identification."[13] We have held, however, that *Brodes* does not preclude an identification witness from testifying about his or her level of certainty.[14] Trial counsel's

---

[8] *Jones v. State*, 303 Ga. App. 366 (1) (693 SE2d 549) (2010) (footnote omitted); see *Clowers v. State*, 299 Ga. App. 576, 578 (2) (a) (683 SE2d 46) (2009).

[9] *Arnold*, supra at 309 (1).

[10] See Court of Appeals Rule 25 (c) (2); *Jones v. State*, 289 Ga. App. 767, 772 (5) (c) (658 SE2d 386) (2008).

[11] *Pringle v. State*, 281 Ga. App. 230, 234 (2) (a) (635 SE2d 843) (2006) (punctuation and footnotes omitted).

[12] 279 Ga. 435 (614 SE2d 766) (2005).

[13] Id. at 442.

[14] *Clark v. State*, 285 Ga. App. 182, 185 (4) (645 SE2d 671) (2007); *Best v. State*, 279 Ga.

failure to pursue a futile objection to this testimony does not constitute deficient performance.[15]

6. Smith contends that his trial counsel should have submitted written jury charges, but fails to indicate which charges should have been requested. At the charge conference, trial counsel sought, unsuccessfully, to have the court charge on lesser included offenses and participated in the formulation of the remaining charges, including a detailed discussion on the identification charge. Under these circumstances, we decline to conclude that the failure to submit written charges was deficient or prejudicial.[16]

*Judgment affirmed. Miller, C. J., and Johnson, J., concur.*

DECIDED APRIL 27, 2010.

*Maryann F. Blend*, for appellant.

*Daniel J. Porter, District Attorney, Justin D. Unger, Assistant District Attorney*, for appellee.

App. 309, 310-311 (3) (630 SE2d 900) (2006).

[15] See *Williamson v. State*, 300 Ga. App. 538, 544 (3) (685 SE2d 784) (2009).

[16] See *Harris v. State*, 272 Ga. 126 (2) (527 SE2d 202) (2000); see also *Tenant v. State*, 218 Ga. App. 620, 623 (4) (e) (462 SE2d 783) (1995).