A10A1423. BUNN v. THE STATE.
(705 SE2d 180)

SMITH, Presiding Judge.

A jury found Michael Shane Bunn guilty on two counts each of child molestation, aggravated child molestation, and cruelty to children in the first degree. Following the denial of his amended motion for new trial, Bunn appeals, alleging that the evidence was insufficient to sustain guilty verdicts on the two counts of cruelty to children and that the trial court erred in failing to define "maliciously" in its charge to the jury. Bunn also contends that he received ineffective assistance of counsel. Having reviewed each of these claims, we find no error and affirm.

The record reveals that Bunn supervised the victims, his two nieces, while their mother was away at work. T. B., the seven-year-old victim, testified that Bunn touched her private parts with his "weewee" on more than one occasion and that these events occurred at her mother's home in the living room. The nine-year-old victim, K. B., testified that Bunn touched her in her "privates" and indicated that he did so with his penis and hand. She stated further that if she or her sister did not want to take off their pants, Bunn "would make us," and that Bunn had touched her inappropriately "[t]en or eleven" times. K. B. explained that she observed Bunn

touch T. B. inappropriately as well. The victims told their mother that while she was away at work, Bunn would make them "sit on the couch he pulls us to him and puts his hands down our pants on our privates."

The therapist who conducted the forensic interview with the girls testified that T. B. told her Bunn "pulled her up on him in the living room on the couch, that it happened more than one time. She said she had seen it happen to [K. B.] . . . she was also asked to lick [Bunn's] . . . penis." The therapist testified further that K. B. told her Bunn had "pulled her up on him, as well . . . his private part had gone inside her private part as well as outside her private part, that he had moved around . . . that it happened every day from when he started watching them in August until several days before the interview." A video of the forensic interviews was played for the jury.[1]

A sexual assault nurse examiner testified that she conducted a sexual assault examination on both of the victims finding only "some generalized redness and other things that are normal," and no evidence of specific injuries.

1. Bunn challenges only the sufficiency of the evidence to support his cruelty to children convictions. He contends that there was insufficient evidence that he maliciously caused the victims "cruel mental pain" as charged in the indictment.

OCGA § 16-5-70 (b) provides that "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."

(a) Bunn first argues that there was no evidence that he caused the girls cruel and unusual pain.

> The determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. . . . We must determine only whether the circumstances here, taking into account the evidence in

---

[1] Bunn took the stand in his own defense and denied any wrongdoing.

favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.

(Citations, punctuation and footnotes omitted.) *Sims v. State*, 234 Ga. App. 678, 679-680 (1) (a) (507 SE2d 845) (1998). Moreover, "a determination of what constitutes excessive mental pain need not depend solely on the victim's testimony." (Citation omitted.) *Alford v. State*, 243 Ga. App. 212, 214 (3) (534 SE2d 81) (2000).

Here, both girls testified that Bunn touched them inappropriately on multiple occasions. T. B. testified that she felt sad about Bunn and that Bunn made her feel uncomfortable when he touched her. K. B. stated that Bunn's actions made her feel uncomfortable. The victims' mother testified that during the time Bunn watched the girls, K. B.'s grades dropped, she would not "pay attention in school," and started stealing in school. She stated further that K. B. also became more aggressive with her sister T. B. during this time. This evidence was sufficient to support the jury's finding that Bunn's acts caused the girls cruel and excessive mental pain. See *Chastain v. State*, 239 Ga. App. 602, 604 (1) (a) (521 SE2d 657) (1999); *Keith v. State*, 279 Ga. App. 819, 822 (3) (632 SE2d 669) (2006) (evidence sufficient to support finding of cruel and excessive mental pain where victim became upset when recounting incident and had to go to counseling to help her cope).

(b) Bunn argues that the State presented no evidence that he acted with malice.

> [M]alice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

(Citation and punctuation omitted.) *Chastain*, supra, 239 Ga. App. at 604 (1) (a).

Bunn acknowledged that he was an authority figure to the girls and that they loved and trusted him. Just as in *Chastain*, malice can be inferred because the girls were children, relatively powerless, who depended upon Bunn "as an uncle and authority figure to care for [them] and to behave responsibly." Id. Bunn should have known that his actions would cause the girls to feel "fear, isolation, confusion,

and shame." Id. We find no lack of evidence of malice.

2. Bunn contends that the trial court erred in failing to define the term "maliciously" as an element of the crime of cruelty to children in the first degree. But we have previously held: " 'Maliciously' has such common understanding that there is no need to define it in the jury charge." (Citations and footnotes omitted.) *Ellis v. State*, 245 Ga. App. 807, 808 (2) (539 SE2d 184) (2000). The trial court properly instructed the jury on the elements of the crime and the State's burden to prove each element beyond a reasonable doubt. See id.

3. Bunn argues that his trial counsel was ineffective. To prevail on an ineffective assistance claim, Bunn must establish pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984),

> that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.

(Citations and footnotes omitted.) *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations and punctuation omitted.) *Vaughn v. State*, 301 Ga. App. 55, 60 (5) (686 SE2d 847) (2009).

(a) Bunn alleges that counsel did not adequately prepare for trial. He points to the motion for new trial testimony of counsel's then supervisor, the circuit public defender, who stated that after Bunn's trial, she reviewed the case file and found that counsel did not adequately prepare for Bunn's case and that she had confronted counsel concerning her finding. Counsel's supervisor stated further that the case activity log indicated that counsel spent only five hours out of court and seventeen hours in court preparing for the case, and she maintained that a case such as Bunn's could not have been prepared in less than forty hours. The supervisor acknowledged, however, that the log was only an estimate.

Counsel testified that although he could not recall how much time he spent on Bunn's case, he met with Bunn "more than [his] other clients," and Bunn "never gave me any information. He basically complained about being in jail and said he shouldn't be

charged. And I didn't get any help from him." Counsel stated further that when he asked Bunn about any potential witnesses or defense theories, Bunn "always reverted to: 'I'm not guilty. Why am I here?' He provided me no names." Counsel explained that, at some point, Bunn told him that the mother of the victims (Bunn's sister) had been molested by her mother's boyfriend in Florida and that he believed that the girls' mother "was making this up through the children to get back at [Bunn]." Although counsel had little faith in Bunn's theory, he nevertheless pursued it at trial.

"There exists no magic amount of time which a counsel must spend in preparation for trial in order to provide a client with adequate counsel. Each case must be judged upon its own circumstances and in light of its own degree of complexity." (Citation and punctuation omitted.) *Benefield v. State*, 231 Ga. App. 80, 81 (497 SE2d 650) (1998). Although counsel's supervisor testified that typically 40 hours or more are needed for preparation of a child molestation case, no evidence was presented that 40 hours were needed to adequately prepare Bunn's case in light of the particular circumstances and degree of complexity. This is especially true here, where the supervisor acknowledged that she did not read the trial transcript and was "not sure of the exact allegations or details" of the case, and where evidence showed that Bunn did not provide any assistance to his counsel in developing facts or defenses requiring time on his case. The trial court therefore did not err in concluding that Bunn failed to show that counsel did not devote an adequate amount of time for trial preparation.

(b) Bunn contends that trial counsel only viewed the DVD of the forensic interview once and failed to request a copy of the transcript of the victims' forensic interview which would have allowed him to point out inconsistencies in the girls' statements and their testimony at trial. But without a showing of the substance of those inconsistencies as well as a reasonable probability that the outcome of the trial would have been different had they been pointed out, Bunn has failed to satisfy the second prong of the *Strickland* test. See *Lenderman v. State*, 271 Ga. App. 883, 886 (611 SE2d 135) (2005).

(c) Bunn argues that counsel failed to cross-examine the child advocacy therapist and failed to consult with any experts concerning her interview techniques. Bunn, however, has failed to establish how the failure to cross-examine the therapist affected the outcome of the case. "The failure of trial counsel to employ evidence cannot be deemed to be 'prejudicial' in the absence of a showing that such evidence would have been relevant and favorable to the defendant." (Citation and punctuation omitted.) *Mitchell v. State*, 220 Ga. App. 264, 266 (469 SE2d 707) (1996). Because Bunn failed to make any proffer of the witness's testimony under cross-examination, it is

impossible for him to show there is a reasonable probability that the outcome of the trial would have been different. Id.

Bunn also failed to point out how or why the therapist's interview techniques were improper. "[A]bsent a proffer of what the testimony of his expert would have been at trial, [Bunn] cannot show that there is a reasonable probability that the outcome of the trial would have been different had his counsel taken the suggested course." (Citation, punctuation and footnote omitted.) *Mora v. State*, 295 Ga. App. 641, 648 (3) (d) (673 SE2d 23) (2009). Bunn therefore did not establish prejudice, and the trial court did not err in rejecting his claim of ineffective assistance of counsel. Id.

(d) Bunn argues that counsel failed to object to the therapist's testimony that T. B. witnessed Bunn's acts against K. B., and vice versa. He argues that such evidence is prohibited by *Woodard v. State*, 269 Ga. 317 (496 SE2d 896) (1998). In *Woodard*, the Georgia Supreme Court declared unconstitutional an amendment to the Child Hearsay Statute that allowed the admission of hearsay statements made by a child under the age of 14 who witnessed an act of physical or sexual abuse inflicted upon another. Id. at 321-323 (3). But *Woodard* is inapplicable here, because *both* girls were victims. See id. at 323 (outlining public policy reasons to support admission of hearsay statements of child victim). Therefore, any objection to this testimony would have been futile, and trial counsel's failure to pursue a futile objection does not constitute deficient performance. See, e.g., *Smith v. State*, 303 Ga. App. 831, 835-836 (5) (695 SE2d 86) (2010); see also *Woodard*, supra.

(e) Finally, Bunn argues that a statement made by the therapist was an impermissible opinion concerning the victims' credibility, and that his trial counsel should have objected to the statement. The therapist stated that it "was good" that K. B. "was comfortable enough and felt like telling what had actually happened was important enough to go back" to correct her mistake in an earlier statement about the room in which the molestation occurred. The therapist explained that this was good because it demonstrated "resistance to suggestibility." It is well established that

> an expert may not testify as to his opinion as to the existence vel non of a fact (in this case, whether the child had been abused sexually) unless the inference to be drawn from facts in evidence is beyond the ken of the jurors — that is, unless the jurors, for want of specialized knowledge, skill, or experience, are incapable of drawing — from facts in evidence — such an inference for themselves.

(Citation omitted.) *Allison v. State*, 256 Ga. 851, 853 (5) (353 SE2d

805) (1987). The statement that Bunn complains of here is not a statement concerning whether, in the therapist's opinion, the victims had been molested. See *Hafez v. State*, 290 Ga. App. 800, 801 (2) (660 SE2d 787) (2008) (statement that social worker was treating victim for " 'exhibiting intrusive thoughts and memories of abuse that are triggered by current events in . . . life' " was not an opinion that the victim had in fact been abused); *Brownlow v. State*, 248 Ga. App. 366, 368 (2) (a) (544 SE2d 472) (2001); compare *Pointer v. State*, 299 Ga. App. 249, 250-252 (1) (682 SE2d 362) (2009) (statement that evaluation "strongly suggests that [victim] had been 'sexually abused as alleged' " was improper).

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED OCTOBER 27, 2010 —
RECONSIDERATION DENIED DECEMBER 14, 2010 — 

*Sheueli C. Wang*, for appellant.

*J. Bradley Smith, District Attorney, Amy M. Carter, Ryan C. Bramblett, Assistant District Attorneys*, for appellee.