**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**May 30, 2014**

# In the Court of Appeals of Georgia

A14A0084. PRITCHETT v. THE STATE.

BOGGS, Judge.

A jury found Matthew Ted Pritchett guilty on two counts of cruelty to children in the first degree and two counts of family violence battery. Following the denial of his motion for new trial, Pritchett appeals, challenging only the sufficiency of the evidence on the cruelty to children counts. We find the evidence sufficient and affirm.

When we review the sufficiency of the evidence,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the

factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

(Citations and footnote omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the evidence show that Pritchett married the mother of six-year-old C. M. and seven-year-old T.W., and that they all lived in the same home along with Ricky Flanagan, a family friend. C. M. testified that Pritchett and Flanagan would punish him "for doing bad things" by shooting him with "BB guns." The guns C. M. referred to were airsoft guns which are spring-loaded and propel a plastic pellet and included two pistols and a rifle. C. M. explained that "[e]very time I got in trouble, they had to shoot me." He stated further that Pritchett and Flanagan would shoot him in the stomach, on the back on his neck, and that Pritchett had shot him in "[his] private spot." He explained that when he was shot with the pellets, it hurt and he would cry, and that he would try to hide behind a tv to avoid the shots. The State presented a drawing made by C. M. that depicted him crying as Pritchett shot him with the airsoft gun. The drawing appears to depict airsoft pellets or marks all over

2

C. M.'s body. When asked how many times Pritchett and Flanagan shot him with an airsoft gun, C. M. replied, "Everyday they shoot me with them guns."

Seven-year-old T. W. testified that Pritchett and Flanagan would shoot her and her brother for "stuff like spilling food at the dinner table." She explained that it would hurt and she would cry. When asked how many times they shot her with the airsoft guns, T. W. replied, "[t]oo many . . . . Like a lot of days." T. W.'s teacher testified that her class was "having a memory day," and that when T. W. was asked about something she would always remember, T. W. stood up and told her class that "she would always remember being shot with the BB gun because she wasn't behaving." C. M.'s teacher testified that C. M. told her he had been shot with the airsoft gun because he did not pull weeds fast enough, and that she noticed a mark on the back of his neck. Both teachers reported the incidents to the school counselor.

A DFACS investigator testified that she received a report concerning the two children, and that when she arrived at the school, she observed marks on both children. T. W. had three marks, and C. M. "had ten or eleven, just small, about the size of a pencil eraser, red, a little bit raised, some of them. [C. M.] had a couple that were a little more broken. Like the skin was a little bit more broken." The DFACS

investigator testified further that both C. M. and T. W. told her that Pritchett and Flanagan shot them with airsoft guns on several occasions.

An investigator with the sheriff's office testified that he also observed the marks on C. W. and T. M., and that some of the welts were "so severe that it broke the skin." He explained that the children repeated to him what they had told teachers and the DFACS investigator. In an interview with police, Pritchett admitted to shooting the children with the airsoft guns and explained that "it is the only thing that will get their attention," that most of the time the gun was not loaded, and that he used it to get their attention "once or twice a week." Pritchett stated to police that C. M. had mistreated the dog and that he used the airsoft gun "to show [C. M.] what pain was."

Pritchett and Flanagan presented as a witness a pawn shop owner familiar with airsoft guns. He explained that guns like the ones used by Pritchett are spring-loaded guns used for entertainment, often by children. On cross-examination, however, this witness testified that he would not use an airsoft gun as a form of discipline for a child. Pritchett presented several other witnesses who used airsoft guns when they were children as a form of recreation and entertainment. Some of these witnesses testified that they had used airsoft guns as teenagers and preteens, and described

4

"getting hit with one of the[ ] little plastic BB's[ ]" as "a hard pinch" or like a bug bite that would leave a "little red spot." Pritchett also presented several character witness including his wife, the childrens' mother, who described him as a good father and good with children.

On appeal, Pritchett argues that his use of the airsoft gun, while not a preferable form of discipline, was not unreasonable, and that the State failed to present sufficient evidence that the children suffered cruel and excessive physical or mental pain. OCGA § 16-5-70 (b) provides that "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." And we have held that

> [t]he determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain . . . . There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.

5

(Citations and punctuation omitted.) *Bunn v. State*, 307 Ga. App. 381, 382-383 (1) (a) (705 SE2d 180) (2010).

Here, taking into account the evidence in favor of the jury's finding, the record showed that Pritchett repeatedly and frequently shot the children with airsoft pistols and an airsoft rifle, shooting C. W. in his groin. The pellets left welts on the children and some of pellets caused broken skin. Both children testified that the pellets caused them pain and made them cry. There was also evidence from which the jury could conclude that the children suffered mental pain. C. W. created drawings showing that he was sad and crying as Pritchett shot him, and he testified that he would hide to avoid being hit by the pellets. T. W. told her classmates and teacher that she would always have a memory of being shot with an airsoft gun for misbehaving. This evidence was sufficient for the jury to conclude that the pain suffered by the children was cruel and excessive. See *Keller v. State*, 221 Ga. App. 846, 847 (1) (473 SE2d 194) (1996) (evidence sufficient to show cruel or excessive physical and mental pain where defendant and victim were inside bathroom, mother heard several blows and crying from inside bathroom and entered to observe defendant with belt in his hand about to swing it at the victim, and victim had bruises caused by a large flexible object that curved around the inside of his legs); *Keith v. State*, 219 Ga. App. 903,

904 (467 SE2d 222) (1996) (evidence sufficient of child cruelty where child was hit in the face with plastic cord because he left it in yard after being told by defendant to pick it up); see also, *Bunn*, supra, 307 Ga. App. at 383 (1) (a) (evidence that after the defendant touched them inappropriately, one victim's grades dropped and she became more aggressive towards her sibling, and that another victim felt sad, was sufficient to support jury's finding that defendant's acts caused cruel and excessive mental pain); *Keith v. State*, 279 Ga. App. 819, 822 (3) (632 SE2d 669) (2006) (evidence sufficient to support finding of cruel and excessive mental pain where victim became upset each time she recounted defendant's attempt to have sex with her).

While Pritchett is correct that implicit in the definition of cruel or excessive is an element of unreasonableness, see *Allen v. State*, 174 Ga. App. 206, 208 (3) (329 SE2d 586) (1985), there was evidence from which the jury could conclude that the use of the airsoft gun to discipline the children was unreasonable discipline. Indeed, one of Pritchett's own witnesses testified that he would not use such a method to discipline children.

The evidence presented at trial was sufficient for a rational trier of fact to conclude that Pritchett maliciously caused the children cruel and excessive physical or mental pain by shooting them with an airsoft gun.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*