**FIRST DIVISION
BARNES, P. J.,
BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 6, 2022**

# In the Court of Appeals of Georgia

A22A0838. SHROPSHIRE v. THE STATE.

BROWN, Judge.

Following a jury trial, Tony Shropshire was convicted of aggravated child molestation, incest, cruelty to children in the first degree, and two counts of child molestation. Shropshire appeals his convictions and the denial of his amended motion for new trial, contending that the evidence was insufficient to support his cruelty to children conviction and that the trial court failed to exercise its discretion to act as the "thirteenth juror." He further contends that the trial court committed jury instruction, sentencing, and merger errors. For the reasons that follow, we affirm Shropshire's conviction for cruelty to children in the first degree, reverse his incest conviction, vacate his convictions and sentences for aggravated child molestation and child

molestation, and remand the case for the trial court to convict and resentence Shropshire on Count 1 for aggravated child molestation.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence." (Citation omitted.) *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 579 (1) (865 SE2d 206) (2021). So viewed, the evidence shows that the five-year-old victim spent the night at her grandmother's house and fell asleep on the couch. During the night, the victim awoke to Shropshire, her uncle, carrying her into a bedroom. Shropshire placed the victim on the bed, pulled down her pants, and licked the victim's vagina. He also laid on top of the victim, touched her vagina with his fingers, and placed his penis on her vagina but "didn't put it in" the victim's vagina. When Shropshire finished after sunrise, the victim put her underwear and pants back on, while watching a naked Shropshire wash his penis in the adjacent bathroom. Shropshire then knelt next to the victim and told her "not to say anything to anyone." The victim testified that she blocked out parts of the incident but remembered being confused, scared, and wanting to cry. Ten years later, the victim disclosed what happened to her mother, aunt, and friend. The victim's mother reported the incident to the police. The victim later told a forensic interviewer about the incident, and the

recording of that interview was played for the jury. The victim's therapist diagnosed her with post-traumatic stress disorder and depression.

At trial, the victim's aunt, Shropshire's sister, testified that Shropshire repeatedly molested her by rubbing his hands and penis on her vagina when he was 15 and she was 5. Another female, C. W., testified that when she was 15 years old, she was hanging out with Shropshire, his brother, and a friend and was given marijuana. After smoking it, C. W. felt sick, her vision became blurry, and she wavered in and out of consciousness. C. W. testified that while she was in this state, Shropshire repeatedly raped her at two different locations. Shropshire's statutory rape conviction stemming from this incident was entered into evidence. Shropshire was 33 years old at the time of these events.

Shropshire was convicted of aggravated child molestation, incest, cruelty to children in the first degree, and two counts of child molestation. The trial court denied Shropshire's motion for new trial, as amended, and this appeal followed.

1. Shropshire contends that the evidence was insufficient to support his conviction for cruelty to children in the first degree. We disagree.

OCGA § 16-5-70 (b) provides that "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child

under the age of 18 cruel or excessive physical or mental pain."[1] Thus, "[a] conviction for first degree child cruelty required the State to present evidence establishing the age of the child, that the child suffered physical *or* mental pain, that the pain was cruel *or* excessive, that the defendant caused the pain, and that the defendant acted maliciously in so doing." (Citation and punctuation omitted; emphasis in original.) *McDaniel v. State*, 360 Ga. App. 194, 200-201 (1) (860 SE2d 806) (2021).

(a) Shropshire argues that there was no evidence he acted with malice. For purposes of first degree child cruelty,

> malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and [wilful] doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive,

---

[1] "[A] crime is to be construed and punished according to the provisions of the law existing at the time of its commission." (Citation and punctuation omitted.) *Bryson v. State*, 350 Ga. App. 206, 207 (2) (828 SE2d 450) (2019). See also *Dunbar v. State*, 363 Ga. App. 869, 872 (1), n.1 (873 SE2d 247) (2022) (analyzing sufficiency of the evidence under statutes in effect at the time of the offenses in 2014). Here, the crimes took place in 2001. However, the definition at that time of cruelty to children in the first degree is identical to the current version. OCGA § 16-5-70 (2001). See, e.g., *Hill v. State*, 243 Ga. App. 614, 616 (533 SE2d 779) (2000).

4

and all other circumstances connected with the act for which the accused is prosecuted.

(Citation and punctuation omitted.) *Vasquez v. State*, 306 Ga. 216, 222 (1) (a) (830 SE2d 143) (2019). "With regard to the crime of cruelty to children, criminal intent may be inferred from conduct before, during and after the commission of the crime." (Citation and punctuation omitted.) Id. at 223 (1) (a). We conclude that the evidence, as outlined above, was legally sufficient to authorize a rational trier of fact to find sufficient malice to find Shropshire guilty beyond a reasonable doubt of first degree cruelty to children. See *Chastain v. State*, 239 Ga. App. 602, 604 (1) (a) (521 SE2d 657) (1999).

(b) Shropshire also contends that the State failed to prove beyond a reasonable doubt that he caused the victim both "excessive physical *and* mental pain," as alleged in the indictment. (Emphasis supplied.)

> [W]hen a defendant is charged with the violation of a penal statute containing disjunctively ("or") several ways or methods a crime may be committed, proof of any one of which is sufficient to constitute the crime, the indictment, in order to be good as against a special demurrer, must charge such ways or methods conjunctively ("and") if it charges more than one of them. Accordingly, on the trial of a defendant under an indictment so charging, it is not incumbent upon the [S]tate to prove all

5

such separate ways or methods alleged in the indictment, but the [S]tate makes a prima facie case upon its establishment by proof of any one of them.

(Citation and punctuation omitted.) *Martin v. State*, 299 Ga. App. 845, 848 (2) (683 SE2d 896) (2009). "And at trial, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form." (Citation and punctuation omitted.) *Cotman v. State*, 342 Ga. App. 569, 581 (1) (804 SE2d 672) (2017). In other words, "[w]hen an indictment alleges in one count two alternative bases for conviction, a verdict of guilty is appropriate if either is established." *Walker v. State*, 254 Ga. 149, 151 (1), n.2 (327 SE2d 475) (1985). Thus, the State only had to prove that Shropshire maliciously caused the victim cruel or excessive physical *or* mental pain.

The determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this instance, mental rather than physical pain). There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other

6

areas on each end of the scale. We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.

(Citation and punctuation omitted.) *Bunn v. State*, 307 Ga. App. 381, 382-383 (1) (a) (705 SE2d 180) (2010). We also keep in mind that "a determination of what constitutes excessive mental pain need not depend solely on the victim's testimony." *Alford v. State*, 243 Ga. App. 212, 214 (3) (534 SE2d 81) (2000).

Here, the victim testified to feeling scared, confused, and wanting to cry during the incident. Subsequently, the victim was diagnosed with post-traumatic stress disorder, anxiety, and depression. The victim's psychologist testified that the victim self-isolated, struggled in school, self-harmed, and was unable to hug or trust her family. After disclosing the incident, the victim attended weekly and bi-weekly therapy sessions. While talking about the incident with her mother and friend separately, the victim cried. The victim's psychologist testified the victim exhibited fear and dissociation when discussing the incident. This evidence was sufficient to support the jury's finding that Shropshire's acts caused the victim cruel or excessive mental pain. See *Keith v. State*, 279 Ga. App. 819, 822 (3) (632 SE2d 669) (2006)

(evidence that the victim became upset when discussing the incident and underwent weekly counseling to cope was sufficient to support finding of cruel or excessive mental pain). See also *Bunn*, 307 Ga. App. at 383 (1) (a) (evidence that the victims felt sad and uncomfortable about defendant touching them as well as evidence of subsequent behavioral problems sufficient to support finding of cruel and excessive mental pain); *Alford*, 243 Ga. App. at 213 (3) (evidence that the victim suffered from recurrent flashbacks of rapes, depression, and at times was fearful, hysterical, and suicidal, sufficient to support finding of cruel or excessive mental pain).

(c) Before turning to Shropshire's remaining enumerations, we find it necessary to address the sufficiency of the evidence in support of Shropshire's conviction for incest. The indictment charged Shropshire with committing incest in that he "did have unlawful sexual contact, *to wit: sodomy*, with [the victim], who was accused's own niece." (Emphasis supplied.) In support of this count, the State presented evidence showing that Shropshire licked the victim's vagina.

At the time of the offense in 2001, see footnote 1, supra, incest was defined, in pertinent part, as follows: "A person commits the offense of incest when he engages in sexual intercourse with a person to whom he knows he is related either by blood or by marriage as follows: . . . Uncle and niece." OCGA § 16-6-22 (a) (6)

8

(2001). In 2010, the General Assembly amended the statute to include "sodomy, as such term is defined in Code Section 16-6-2," in an effort "to provide for gender neutrality with regard to the offense of incest." 2009 Georgia House Bill No. 571 (May 20, 2010). The current version of OCGA § 16-6-22 pertinently provides that "[a] person commits the offense of incest when such person engages in sexual intercourse *or* sodomy, as such term is defined in Code Section 16-6-2, with a person whom he or she knows he or she is related to either by blood or by marriage as follows: . . . Uncle and niece." (Emphasis supplied.) OCGA § 16-6-22 (a) (6). Thus, the definition of incest at the time the offense occurred did not include "sodomy," and we are faced with the question of whether "sexual intercourse," as employed in OCGA § 16-6-22, encompassed licking the victim's vagina.

> [I]n considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. . . . In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. Criminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations. Also, if a criminal statute is susceptible to more than one reasonable

9

interpretation, the interpretation most favorable to the party facing criminal liability must be adopted.

(Citations and punctuation omitted.) *Scott v. State*, 356 Ga. App. 152, 157 (846 SE2d 241) (2020) ("*Scott II*").

"Sodomy" is defined as "perform[ing] or submit[ing] to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1). The phrase "sexual intercourse" is not defined in OCGA § 16-6-22, and the Code does not otherwise provide an applicable definition. "Thus, we must examine the meaning of those words in their broader context[.]" *GeorgiaCarry.Org v. Atlanta Botanical Garden*, 306 Ga. 829, 834-835 (3) (834 SE2d 27) (2019). "[F]or context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." (Citation and punctuation omitted.) *Nuckles v. State*, 310 Ga. 624, 631 (3) (853 SE2d 81) (2020).

Black's Law Dictionary defines "intercourse" in this context as "[p]hysical sexual contact, esp. involving the penetration of the vagina by the penis." Black's Law Dictionary (11th ed. 2019). When used elsewhere in the Code, the phrase

10

"sexual intercourse" does not appear to be synonymous with, or inclusive of, "sodomy."[2] For example, OCGA § 16-6-9, at the time the legislature amended the incest statute in 2010, defined prostitution as follows: "A person commits the offense of prostitution when he or she performs or offers or consents to perform a *sexual act, including, but not limited to, sexual intercourse or sodomy*, for money or other items of value."[3] (Emphasis supplied.)

To conclude that "sexual intercourse" in the former incest statute already included acts of sodomy is to conclude that the addition of "sodomy" made no change

---

[2] "[A] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized whenever possible, so as to ascertain the legislative intendment and give effect thereto." (Citation and punctuation omitted.) *Iglesia Del Dios Vivo Columna Y Apoyo De La Verdad La Luz Del Mundo v. Downing*, 321 Ga. App. 778, 783 (1) (742 SE2d 742) (2013).

[3] A prior version of OCGA § 16-6-9 defined prostitution as "perform[ing] or offer[ing] or consent[ing] to perform an act of sexual intercourse for money." In *Allen v. State*, 170 Ga. App. 96 (316 SE2d 500) (1984), this Court concluded that "an act of sexual intercourse" under the then-existing definition of prostitution included *anal* intercourse. Id. at 96-97 (1), (2). See also *Owens v. Owens*, 247 Ga. 139, 140 (2) (274 SE2d 484) (1981) (concluding that "sexual intercourse," as used in former Code section defining adultery, includes "both extramarital homosexual, as well as heterosexual, relations"). In *Crawford v. State*, 154 Ga. App. 362, 363 (1) (268 SE2d 414) (1980), we treated an offer to perform both "oral sodomy" and "an act of prostitution" as separate offenses. See also *McGee v. State*, 165 Ga. App. 423 (1) (299 SE2d 573) (1983) (citing *Crawford* and noting that "the law treats solicitation of prostitution (pandering) and solicitation of sodomy separately").

11

to the statute's application. "Such a reading of course violates a core principle of statutory interpretation that changes in statutory language generally indicate an intent to change the meaning of the statute." *GeorgiaCarry.Org*, 306 Ga. at 836 (3). We conclude that "sexual intercourse" does not include sodomy. Therefore, the evidence presented at trial was insufficient to show that Shropshire committed incest as that crime was defined in 2001, and this conviction must be reversed. Cf. *Martinez v. State*, 325 Ga. App. 267, 271-272 (2) (750 SE2d 504) (2013).

(d) We have reviewed the evidence supporting Shropshire's remaining convictions for aggravated child molestation and child molestation and find it sufficient.

2. Shropshire next contends that the trial court erred by failing to consider his amended motion for new trial on the "general grounds." Specifically, he contends that the court's order does not reflect that it evaluated the credibility of the witnesses, considered conflicts in the evidence, and weighed the evidence in deciding whether to exercise its discretion to grant a new trial in its role as the thirteenth juror. We disagree.

The order denying Shropshire's amended motion for new trial states "[a]fter hearing and consideration of the record, Defendant's Motion for New Trial is

12

Denied." While nothing in the order refers to the trial court's exercise of discretion as the thirteenth juror, "[t]his Court presumes, in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21." *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019). Thus, as here, "when a trial court enters an order denying a motion for new trial and, 'without more, recites that the new trial is refused or denied, this will be taken to mean that [the judge] has in the exercise of his discretion approved the verdict.'" (Citation omitted.) *Price v. State*, 305 Ga. 608, 613 (3) (825 SE2d 178) (2019). Accordingly, this claim is without merit.

3. Shropshire contends that the trial court misinstructed the jury on incest by failing to tailor the jury charges to the indictment. Because we have reversed Shropshire's incest conviction, this enumeration is rendered moot. See, e.g., *Agan v. State*, 319 Ga. App. 560, 563 (2) (737 SE2d 347) (2013).

4. Shropshire contends that his sentences for both counts of child molestation are void because the trial court failed to probate a portion of his sentence in accordance with OCGA § 17-10-6.2 (b). We disagree.

13

As previously stated, "a crime is to be construed and punished according to the provisions of the law existing at the time of its commission." (Citation omitted.) *Bryson*, 350 Ga. App. at 207 (2).

> OCGA § 17-10-6.2 was first enacted in 2006 as part of the same legislation in which the General Assembly modified the punishment provisions related to aggravated child molestation and other sexual crimes. Because OCGA § 17-10-6.2 was not in effect when [Shropshire] committed the charged crime[s in 2001], the trial court committed no error in failing to apply its provisions when sentencing [Shropshire].

(Citations omitted.) *Richardson v. State*, 334 Ga. App. 344, 347 (1) (779 SE2d 406) (2015). See also *Hardin v. State*, 344 Ga. App. 378, 388-389 (2) (810 SE2d 602) (2018) (the July 2017 amendment enabling split aggregate sentencing for sexual offenses is not retroactive).

5. Shropshire argues that the trial court erred by not merging his aggravated child molestation and two child molestation convictions into a single conviction. Once again, because a crime is to be construed according to the law existing at the time of its commission, we look to the statutes that were in effect in 2001. See *Johnson v. State*, __ Ga. App. __ (2), n.3 (__ SE2d __) (Case No. A20A0996, decided

14

June 15, 2022) (analyzing statute in effect when the crimes were committed in 2007 for the unit of prosecution).

Count 1 of the indictment charged that Shropshire committed aggravated child molestation by "licking [the victim's] female sex organ with his tongue, with the intent to arouse and satisfy accused's sexual desires; said act involving an act of sodomy." Counts 3 and 4 charged Shropshire with child molestation by "touching [the victim's] female sex organ with his finger, with the intent to arouse and satisfy the accused's sexual desires" and "placing his male sex organ on the victim's female sex organ, with the intent to arouse and satisfy accused's sexual desires," respectively.

> "Merger" refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those crimes. Merger analysis often involves counts charging two different crimes and that is the context in which *Drinkard*'s "required evidence" test is applied. [*Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006).] But merger questions may also arise when a defendant is charged with multiple counts of the same crime.

15

(Citation and punctuation omitted.) *Hogg v. State*, 356 Ga. App. 11, 16 (2) (846 SE2d 183) (2020). "In this context, the merger analysis requires careful interpretation of the criminal statute at issue to identify the 'unit of prosecution' — 'the precise act or conduct' that the legislature criminalized." (Citation and punctuation omitted.) *Scott v. State*, 306 Ga. 507, 509 (2) (832 SE2d 426) (2019) ("*Scott I*"). "Whether a particular course of conduct involves one or more distinct offenses under the statute depends on . . . legislative choice, [and] the text of the statute itself best reflects that legislative choice." (Citation and punctuation omitted.) *Edvalson v. State*, 310 Ga. 7, 8 (849 SE2d 204) (2020).

In *Scott I*, the Supreme Court indicated that "the Court of Appeals failed to engage in the applicable unit-of-prosecution analysis" in opinions addressing the merger of aggravated child molestation and child molestation convictions. 306 Ga. at 510 (2), citing *Carver v. State*, 331 Ga. App. 120, 122 (4) (769 SE2d 722) (2015) (analyzing merger of aggravated child molestation convictions and two child molestation convictions), and *Metts v. State*, 297 Ga. App. 330, 336 (5) (677 SE2d 377) (2009) (analyzing merger of aggravated child molestation conviction and chid molestation conviction). Accordingly, in determining whether Shropshire's

16

convictions for aggravated child molestation and child molestation merge, we will apply a unit-of-prosecution analysis.

While this Court has concluded that multiple counts of aggravated child molestation do not merge under a unit-of-prosecution analysis, see *Pavlov v. State*, 362 Ga. App. 831, 836 (2) (b) (870 SE2d 449) (2022); *Fossier v. State*, 362 Ga. App. 184, 190-191 (5) (867 SE2d 545) (2021), we have not considered a case involving multiple counts of child molestation and a single count of aggravated child molestation. We therefore must examine "the criminal statute at issue to identify the unit of prosecution — the precise act or conduct that the legislature criminalized." (Citations and punctuation omitted.) *Scott I*, 306 Ga. at 509-510 (2).

In evaluating the language of OCGA § 16-6-4 (a), defining the offense of child molestation, this Court has found that "the General Assembly has not, by clear and unambiguous language, provided that multiple touches to a victim, during a single uninterrupted course of conduct, authorize multiple prosecutions and convictions for separate acts of child molestation." (Citation and punctuation omitted.) *Carr v. State*, 363 Ga. App. 35, 44 (2) (b) (870 SE2d 531) (2022), citing *Scott II*, 356 Ga. App. at 162-163. Indeed, "the child molestation statute . . . does not contain any qualifying language with respect to acts of molestation involving different enumerated parts of

17

[the defendant's] body during a single uninterrupted course of conduct." *Scott II*, 356

Ga. App. at 160.[4] On the other hand, we have concluded that "each distinct act of

---

[4] Following this Court's decision in *Scott II*, the General Assembly amended OCGA § 16-6-4, adding subsection (a.1), which provides:

> For purposes of this Code section, when a person does an immoral or indecent act involving touching of any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of the child or the person, and such person touches such child in multiple areas of such child's body, the touching of each area shall constitute a separate offense of child molestation.

See 2022 Ga. Laws 648, § 1 (H.B. 1188). Subsection (a) was amended to provide that a person commits the offense of child molestation when such person does "*an* immoral or indecent act" rather than "*any* immoral or indecent act." (Emphasis supplied.) Id. These changes became effective July 1, 2022, but are inapplicable here because the crimes were committed in 2001. We also note that this language does not cover the situation, as here, where the defendant touches only one area of the child's body with multiple parts of the defendant's body. We again point out that

> there are reasons legislators may want to treat child molestation differently from other crimes. Our Supreme Court has made clear that the State has a compelling governmental interest in the welfare of the children. Its interest in safeguarding the physical and psychological well-being of a minor is compelling and beyond the need for elaboration. This interest is especially true with respect to the [aggravated child molestation and] child molestation statute where the gravamen of the offense is to address the unique harms caused by sexual crimes against a child.

(Citations and punctuation omitted.) *Scott II*, 356 Ga. App. at 161. As put by the Wisconsin Court of Appeals,

> [r]epeated acts of forcible sexual intercourse are not to be construed as a roll of thunder, an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of

18

sodomy is a unit of prosecution for aggravated child molestation" based on the phrases "'which act'" and "'an act'" found in the definition of aggravated child molestation.[5] See *Pavlov*, 362 Ga. App. at 836 (2) (b). In light of these decisions interpreting the statutory language at issue, the Supreme Court's direction in *Scott I* to apply a unit-of-prosecution analysis to the merger of aggravated child molestation and child molestation, and our examination of the statutory language at issue, we conclude that an ambiguity exists as to the appropriate unit of prosecution for child molestation and aggravated child molestation. We therefore must resolve this ambiguity in favor of the defendant. *Dukes v. State*, ___ Ga. App. ___ (1) (a) (Case No. A22A0633, decided September 2, 2022).

We now "consider whether the criminal acts alleged in the relevant . . . counts were part of a single course of conduct occurring in a relatively short time frame or whether those acts appear to have occurred in discrete incidents over a relatively long period, such that the State is authorized to charge the . . . crimes in . . . different units

---

further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim. *Harrell v. State*, 88 Wis.2d 546, 565 (B) (277 NW2d 462) (Wis. Ct. App. 1979).

[5] OCGA § 16-6-4 (c) provides: "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."

19

of prosecution." (Citation and punctuation omitted.) *Carr*, 363 Ga. App. at 40 (2) (a). Factors relevant to that analysis include whether Shropshire "acted with the same or differing intents"; "whether the crimes occurred at the same place"; and "whether the crimes occurred at the same time or were separated by some meaningful interval of time." *Johnson*, __ Ga. App. at ___ (1).

Counts 1, 3, and 4 charged Shropshire with acts against the victim by touching her vagina with his tongue, finger, and penis, respectively, with the intent to arouse and satisfy Shropshire's sexual desires. All counts alleged the abuse occurred on or about November 1, 2001, and the evidence presented at trial, including the victim's testimony, showed that the touching occurred in a single, uninterrupted incident in a bedroom at her grandmother's house, lasting until just after sunrise. Accordingly, we must vacate Shropshire's convictions and sentences for Counts 1, 3, and 4, and remand the case for the trial court to convict and resentence Shropshire on only Count 1 for aggravated child molestation. See *Scott II*, 356 Ga. App. at 160-161; *Hogg*, 356 Ga. App. at 15 (2) (b).

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Barnes, P. J., and Hodges, J., concur.*

20